## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

MARCOS PIERAS, individually, and on ) Civil Action No.
behalf of all others similarly situated, )
                                     )
        Plaintiff,        ) **CLASS ACTION COMPLAINT**
                                     )
v.                                 )
                                   ) **DEMAND FOR JURY TRIAL**
VOLKSWAGEN GROUP OF )
AMERICA, INC., a New Jersey )
corporation, d/b/a AUDI OF AMERICA, )
INC., AUDI AG, a German corporation, )
and VOLKSWAGEN AG, a German )
corporation, )
        Defendants.    )
_____

## INTRODUCTION

1.    Plaintiff Marcos Pieras ("Plaintiff") brings this action for himself and on behalf of all persons in the United States who purchased or leased any 2015-2020 Audi equipped with an autonomous emergency braking system ("Class Vehicles") against Volkswagen Group of America, Inc., ("VWGoA") d/b/a Audi of America, Inc., Audi AG, and Volkswagen AG ("VWAG") (collectively "VW" or "Defendants"). The allegations herein are based on personal knowledge as to Plaintiff's own conduct and are made on information and belief as to other matters based on an investigation by counsel.

2.    Autonomous emergency braking ("AEB") systems are one of the most highly touted advancements in automobile safety. As described by Consumer

Reports, with AEB systems installed, "[t]he vehicle stops independently when it senses a crash is imminent to avoid a crash, or to reduce the severity of a crash that can't be avoided."[1]  There are both forward systems, which activate when the car is driving forward, and rear systems, which activate when the car is in reverse.[2]  When working properly, these systems can reduce the incidence of collisions and the resultant injuries.

3.     VW has heavily advertised the safety of its vehicles in model year 2015-2020 Audi vehicles equipped with a forward or rear AEB system ("Class Vehicles").



[3]

4.     As described by VW, the "Pre Sense" system "detects collision hazards all around the car and initiates specific safety measures."[4]  Audi Pre Sense Front

---

[1] https://www.consumerreports.org/car-safety/automatic-emergency-braking-guide/
[2] *See id.*
[3] Available at https://www.auto-brochures.com/makes/Audi/A4/Audi_US%20A4_2017.pdf
[4] *See* https://www.audi-mediacenter.com/en/technology-lexicon-7180/driver-assistance-systems-7184.

(alternatively called Audi Pre Sense City) is a forward AEB system that shares components and functionality with the Adaptive Cruise Control and Lane Assist features and uses shared radar sensors and cameras. The Audi Pre Sense Rear system, which is a rear AEB system, shares components and functionality with the Side Assist feature and uses shared radar sensors.

5.    VW states that the Audi Pre Sense Front/City:

utilize[s] the data of radar sensors and/or the front camera, depending on the car model, to compute the probability of a collision. Within the limitations of the system, it warns of collision threats and initiates braking at specific vehicle speeds. Vehicles are detected in the driving speed range of up to 250 km/h *(155.3 mph)*, pedestrians up to around 65 km/h *(40.4 mph)* or 85 km/h *(52.8 mph)* depending on the model, as well as cyclists, depending on the system.[5]

6.    Similarly, regarding Audi Pre Sense Rear, VW states:

Audi pre sense rear uses radar sensors in the rear bumper to detect an impending rear-end collision, and it initiates preventive safety measures. These include pretensioning the front seat belts by electric power and closing the windows and sliding sunroof. In addition, the system activates the hazard warning lights to alert following traffic to the critical situation. In this process, the Rear-end collision alert signal (RECAS) is triggered, which flashes the hazard warning lights at a high frequency. Audi pre sense rear is active in background over the car's entire driving speed range with the exception of trailer towing situations.[6]

---

[5] *Id*.

[6] *Id*.

7.    These systems are becoming standard on nearly every Audi model, including the A4.  As described in the 2017 A4 brochure[7]:

> This standard innovation monitors vehicles and pedestrians ahead to help prevent collisions. It uses the front camera on the windshield to sense potential obstacles. If there is an imminent threat, it alerts the driver first with a warning—then if no action is taken—gives a warning jolt and finally, activates automatic emergency braking if needed.[1]

8.    VW has also produced and distributed widely videos and commercials, discussed *infra*, describing how the Pre Sense system can prevent a collision when another vehicle stops abruptly in front of the car, when a deer darts in front of the oncoming Audi, or when a pedestrian or car crosses behind the Audi as it is backing up.

9.    In order to make sure the Pre Sense system works as intended and advertised, VW must ensure that the component systems utilized by the Pre Sense system, and devised by various suppliers, communicate properly.  For example, sensors on the front of the vehicle, produced by suppliers such as Robert Bosch LLC, must communicate information to the braking system and the ABS Control Module to apply the brakes, must communicate information to the Transmission Control Module ("TCM") to shift the car into the proper gear, and must communicate with the Powertrain Control Module ("PCM") (or Engine Control Module) to limit power

---

[7] Available at https://www.auto-brochures.com/makes/Audi/A4/Audi_US%20A4_2017.pdf

from the engine so that car is no longer propelled forward.  Calibrating these systems to work together properly is the responsibility of VW.

10.     VW failed to inform Plaintiff and members of the Class before or during the time of sale that the AEB systems in Class Vehicles have design, material, manufacturing and/or workmanship defects, as described in further detail below.  As a result, they are prone to activating the brakes when there are no objects in the vehicle's path.  By the same token, the AEB system also fails to activate when there are persons or objects in motion in front of the vehicle (the "AEB System Defect" or "Defect").  The AEB System Defect prevents the Class Vehicles from behaving as designed and advertised in real-world driving conditions.

11.     Because of the AEB System Defect, the Class Vehicles are predisposed to unexpected slowing or stopping suddenly without driver input when there are no obstacles in front of or behind the vehicle.  These unexpected events *increase* the likelihood of collisions.  Conversely, the AEB System can also fail to activate in the exact situations it was designed to detect and mitigate, such as when a pedestrian or vehicle stops abruptly in front of or behind the Class Vehicle.  Thus, the Defect makes the AEB System unpredictable and makes driving the vehicle unsafe, while at the same time rendering the system unresponsive when it is most needed.

12.     Based on pre-production testing, including design failure mode analysis, durability testing, early warranty claims, replacement part orders, and

consumer complaints to VW's authorized network of dealers, as well complaints to the National Highway Traffic Safety Administration ("NHTSA"), Defendants were aware of the AEB System Defect in the Class Vehicles as early as 2013. Despite being aware of the Defect and numerous complaints, VW knowingly, actively and affirmatively omitted and concealed the existence of the AEB System Defect in advertising, manuals, and elsewhere to increase profits by selling additional Class Vehicles at inflated prices.

13.    On information and belief, the Class Vehicles utilize the same or substantially identical core vehicle components, and the AEB System Defect is the same for all Class Vehicles.

14.    For the Class Vehicles, VW offers a 4-year or 50,000-mile, whichever comes first, New Vehicle Limited Warranty ("NVLW"). Despite knowing of the Defect, VW has not disclosed the existence of the Defect and has not fixed the Defect, exposing Plaintiff, Class Members, and members of the general public to unsafe driving conditions that often occur without warning.

15.    The alleged AEB System Defect was inherent in each Class Vehicle and was present in each Class Vehicle at the time of sale.

16.    VW knew about the AEB System Defect present in every Class Vehicle, along with the attendant safety problems, and concealed this information from Plaintiff and Class Members at the time of sale, lease, repair, and thereafter. In

fact, instead of repairing the Class Vehicles, VW has insisted that the vehicles are working as designed.

17.    If Plaintiff and Class Members had known about the AEB System Defect at the time of sale or lease, Plaintiff and Class Members would not have purchased or leased the Class Vehicles or would have paid less for them.

18.    As a result of their reliance on Defendants' omissions, owners and/or lessees of the Class Vehicles suffered an ascertainable loss of money, property, and/or value of their Class Vehicles. Additionally, as a result of the AEB System Defect, Plaintiff and Class Members were harmed and suffered actual damages in that the Class Vehicles' are defective, that they overpaid for defective vehicles, and that the Class Vehicles' AEB Systems increase their chances of being involved in a collision by activating without cause and failing to activate when they should.

## THE PARTIES

### **Plaintiff Marcos Pieras**

19.    Plaintiff Marcos Pieras is a citizen of Georgia and resides in Decatur, Georgia.

20.    In or around November 2017, Pieras purchased a 2018 Audi A4 equipped with the Pre Sense system from Audi South Atlanta, an authorized Audi dealership located in Union City, Georgia.

21.    Pieras purchased his vehicle primarily for personal, family, or household use.

22.    Passenger safety and reliability, as well as a functional Autonomous Emergency Braking system, were factors in Pieras's decision to purchase his vehicle.  Before his purchase, Pieras reviewed advertisements for the A4 on the internet, reviewed the window sticker (the "Monroney" sticker), and test drove the 2018 A4.  He also performed extensive pre-purchase online research regarding the vehicle, including viewing Audi's website, which prominently advertised and discussed the Pre Sense System.

23.    Had VW disclosed the AEB System Defect before Pieras purchased his vehicle, Pieras would have seen such disclosures and been aware of them. Indeed, VW's misstatements and omissions were material to Pieras. Like all members of the Class, Pieras would not have purchased his Class Vehicle, or would have paid less for the vehicle, had he known of the AEB System Defect.

24.    In addition, in making his purchasing decision, Pieras relied on representations from VW and its authorized dealership that the vehicle was fully functional, safe, durable, reliable, and/or the AEB System operated correctly and effectively.  In particular, Pieras recalls viewing several Audi commercials, including one in which the vehicle stops automatically to avoid a deer before the driver can react.  He also spoke with the salesperson at Audi South Atlanta and, as

discussed above, he test drove the vehicle before making his purchase. Pieras relied on these representations in purchasing the vehicle and, absent these representations, would not have purchased the vehicle or would have paid less for it.

25.     In or around December 2017, shortly after his purchased, Mr. Pieras began to experience the AEB System Defect. Without warning and with no objects in the road in front of him, the AEB system slammed on the brakes, bringing his vehicle to a stop. These unnecessary brake applications occurred seemingly at random, leaving Pieras no way of anticipating these unsafe events.

26.     On other occasions, the vehicle alerted him that the Pre Sense system was not functioning at all.

27.     Needing to prevent the Defect from reoccurring, Pieras reviewed the owners' manual, and pursuant to its instructions, he lowered the sensitivity of the Pre Sense system, in the hopes that it would solve the AEB System Defect. Despite this effort, the unnecessary braking continued, and he continued to receive occasional alerts from the vehicle that the Pre Sense system was not functioning.

28.     On or about October 23, 2019, Pieras took his vehicle to the Audi dealership and complained about the Pre Sense System. The dealership both told Mr. Pieras, falsely, that his vehicle was functioning normally, while also resetting the front sensor in his vehicle.

29.     Despite the Audi dealership's assurance and sensor recalibration, Pieras again experienced the AEB System Defect when, *the very next day*, his vehicle braked autonomously without any obstacles in the road. When Mr. Pieras notified the Audi dealership by text, the representative stated that the front sensor was probably dirty and provided instructions for locating the sensor.  Mr. Pieras cleaned the sensor.

30.      Predictably, this effort again did not repair the AEB System Defect. Instead, the Pre Sense system continues to engage sporadically despite no obstacles being present in front of his vehicle.

31.     On or about November 6, 2020, Plaintiff Pieras was driving when his vehicle alerted him that the Pre Sense function was "currently limited." He pulled over and examined his vehicle, including taking a picture, to try and determine the cause of the issue but could not find anything unusual.  Later, the "currently limited" error message disappeared without intervention.

32.     Due to the AEB System Defect, Pieras has overpaid for a defective vehicle.

33.     At all times, Plaintiff Pieras, like all Class Members, had attempted to drive his vehicle in a foreseeable manner and in the manner in which it was intended to be used.

34.     Plaintiff Pieras and every other Class Member's ascertainable losses include, but are not limited to, out-of-pocket losses by overpaying for the vehicles at the time of purchase and repair costs, decreased performance of the vehicles, loss of use of the vehicles, and diminished value of the vehicles. Accordingly, Plaintiff brings claims individually and as representative of the Class.

## **Defendants**

35.     Defendant VWGoA is a New Jersey corporation with its headquarters at 220 Ferdinand Porsche Drive, Herndon, Virginia 20171. One of its fictious names is Audi of America, Inc., which it has registered with the Virginia Secretary of State.

36.     Defendant VWGoA, through its various entities, markets, distributes, warranties, and sells Volkswagen and Audi-branded automobiles and parts for those automobiles, including the Class Vehicles, in multiple locations across the United States including in Georgia.

37.     In order to sell vehicles to the general public, VWGoA enters into agreements with authorized dealerships who engage in retail sales with consumers such as Plaintiff.  In return for the exclusive right to sell new Volkswagen and/or Audi-branded vehicles, authorized dealerships are also permitted to service and repair these vehicles under the warranties that VWGoA provides directly to consumers who purchased new vehicles from the authorized dealerships.  All service and repair at an authorized dealership is completed according to VWGoA, Audi AG,

and VWAG instructions, issued through service manuals, technical service bulletins ("TSBs"), technical tips ("TT"), and other documents.  Per the agreements between VWGoA and the authorized dealers, consumers such Plaintiff are able to receive services under VWGoA's issued warranty at dealer locations that are convenient to them.  These agreements provide VWGoA with a significant amount of control over the actions of the authorized dealerships.

38.    VWGoA also developed and disseminated the owner's manual and warranty booklets, advertisements, and other promotional materials relating to the Class Vehicles.  VWGoA also is responsible for the content of the Moroney Stickers on Volkswagen and Audi-branded vehicles.

39.    Defendant Volkswagen AG is a German corporation headquartered in Wolfsburg, Germany.

40.    VWAG designs, engineers, manufactures, tests, markets, supplies, sells and distributes Volkswagen, Skoda, and Audi-branded vehicles and parts for those vehicles worldwide, including the in the United States.  VWAG also coordinates the activities of its subsidiaries.

41.    Audi AG is a German corporation headquartered in Ingolstadt, Germany.

42.    Audi AG designs, engineers, manufactures, tests, markets, supplies, sells and distributes Audi-branded vehicles and parts for those vehicles worldwide, including in the United States.

43.    VWAG is the parent corporation of VWGoA and Audi AG, which are each wholly owned subsidiaries.

44.    For all VWAG United States subsidiaries, including VWGoA, VWAG and/or Audi AG provides all the technical and information for the purpose of servicing, and repairing the Class Vehicles, as well as the information needed to draft the owners' manuals.

45.    The relationship between Audi AG and VWGoA is governed by a General Distributor Agreement that gives Audi AG and/or VWAG the right to control nearly every aspect of VWGoA's operations related to Audi-branded vehicles—including sales, marketing, management policies, information governance policies, pricing, and warranty terms.

46.    VWAG, Audi AG and/or their agents installed and calibrated the sensors in the Class Vehicles.

**JURISDICTION**

47.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2).  Personal jurisdiction over Defendants is proper because Defendant VWGoA is incorporated here, and all Defendants have purposefully availed

themselves of the privilege of conducting business activities in New Jersey, and throughout the United States, including, but not limited to, designing, marketing, warranting, distributing, and/or selling Class Vehicles and their components to Plaintiff and prospective class members.

48.     Members of the proposed Class, which includes citizens of all 50 states, or in the alternative, Georgia, are citizens of states other than New Jersey, where VWGoA is incorporated, and Germany, where VWAG and Audi AG are headquartered and located.

49.     On information and belief, aggregate claims of individual Class Members exceed $5,000,000 in value, exclusive of interest and costs.

## VENUE

50.     VW, through their business of distributing, warranting, selling, and leasing the Class Vehicles, has established sufficient contacts in this district such that personal jurisdiction is appropriate.  As such, Defendants are deemed to reside in this district pursuant to 28 U.S.C. § 1391(c)-(d).

51.     In addition, a substantial part of the events or omissions giving rise to these claims took place in this District because VWGoA incorporated in this District. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b).

## FACTUAL ALLEGATIONS

52.    Defendants VWAG and Audi AG are manufacturers and distributors of vehicles sold by Defendant VWGoA under the Audi brand throughout the United States. Defendants VWAG and Audi AG designed and manufactured the Class Vehicles, and Defendant VWGoA imported, distributed, marketed and/or sold the Class Vehicles in the United States. Defendant VWGoA also provides service and maintenance for the Class Vehicles through its extensive network of authorized dealers and service providers nationwide, using information provided by VWAG and/or Audi AG.  VW has sold, directly or indirectly, though dealers and other retail outlets, hundreds of thousands of Class Vehicles Georgia, and nationwide in total. In 2019, VW sold over 200,000 in the United States alone, and Audi AG's group, encompassing its operations in the United States, had €55.7 billion in revenue, or approximately $66.4 billion.[8]

53.    One of the newest pieces of technology in Audi vehicles is the Pre Sense suite of safety features, which prominently feature an autonomous braking system that is supposed to warn the driver of obstacles in the road and also engage the brakes independently if the driver fails to react.  This system is a part of other

---

[8] *See* https://www.audi-mediacenter.com/en/press-releases/financial-year-2019-audi-ag-achieves-its-financial-targets-and-sets-a-course-for-long-term-competitiveness-12695.

collision avoidance systems installed in Class Vehicles, which have the goal of preventing or reducing the severity of an impact.

54.    Pre Sense was first introduced in Audi vehicles in 2010, in the 2011 Audi A8.  As with all Pre Sense systems, it utilized the radar and cameras from the Adaptive Cruise Control ("ACC") and Lane Assist systems.

55.    Even as changes to Pre Sense were implemented in later vehicles, VW continued to use the same radar sensors in the front of the vehicle that were used by the ACC, the cameras used by the Lane Assist feature, and the sensors used by the parking features.  This remains true of the current iteration of the Pre Sense system.

56.    As with other systems in a vehicle, the AEB system is run by a control module built and programmed by the supplier.  This module is equipped with a proprietary algorithm that takes the data acquired from sensors, as well as other modules in the vehicle such, as the transmission control module, to determine the speed, acceleration, and distance for both the vehicle itself and the object ahead.

57.    In any given vehicle model, integration and calibration of the AEB system typically occurs near the end of the research and development process so that the control module can be given final values for vehicle weight and configuration.  This is overseen by the vehicle manufacturer, often with assistance from suppliers' engineers.  Modules as provided by the supplier must be "tuned"

16

both to achieve the desired goal of the vehicle manufacturer as well as to work with all the other modules in the vehicle.

58.    Upon information and belief, the AEB System Defect is caused by defects in design, materials, and/or workmanship in the manufacture and installation of system components, in the code underlying the algorithms which control the AEB System response, and/or in the calibration and integration of the AEB System software with the software that run related systems in the vehicle, including the steering, transmission, and braking systems.

59.    In order to work as intended, the sensors used by the AEB System must be manufactured with materials that are free of impurities.  Further, they must be installed and centered precisely.  Even tiny variations in materials or positioning can cause the AEB System to malfunction.  Upon information and belief, the AEB System Defect is caused in part by such manufacturing issues.

60.    Further, upon information and belief, the software which controls the AEB System response – the underlying coding and algorithm which discriminates between landscape and obstacles and then decides on the correct response – suffers from programming defects during manufacturing which differ from the intended design of the software.

61.    Moreover, VW's desired goal with the current iteration of the AEB systems in the Class Vehicles[9] is collision avoidance, as opposed to merely reducing the severity of the impact.  As a result, upon information and belief, VW has improperly tuned the AEB systems to fully apply the brakes when the system detects anything it believes is stationary in front of the vehicle, even if the object is on the side of the road, regardless of its size, so that the AEB activates unnecessarily early and with unnecessary force.  Moreover, the AEB system does not always accurately identify what items are stationary.

62.    However, these same sensors are unable to detect moving objects that cross in front of the car, in contradiction to the commercials VW has caused to be distributed that show its vehicles stopping if a car suddenly cuts in front of the vehicle or if a deer darts in front of the vehicle from the side of the road.

63.    Further, the testing and validation procedures used by VW were insufficient to properly mimic real-world conditions, including actual driver reaction time, the existence of large objects on the side the road like garbage cans, metal guard rails, tunnels, the presence of extreme curves in certain roads including on and off-ramps to highways and freeways, the many parked cars in a parking lot, and inclines at the end of driveways and at entrances to parking lots.

---

[9] Upon information and belief, the current iteration of the AEB System was first installed in model year 2015 vehicles.

64.    Despite this insufficient calibration and tuning process that fails to account for real world driving conditions, VW has touted Pre Sense system has providing an "elevated level of safety for vehicle occupants."[10]  For example, in a video, VW explains that Pre Sense Front monitors the traffic and objects ahead of the vehicle with radar and calculates the likelihood of a collision before deciding to engage the system including the brakes.  Pre Sense Front is active when the vehicle is traveling at speed above 6 miles per hour and will brake if it does not sense the driver braking.[11]  As described by VW, the AEB system first gives an audible warning, then applies some initial braking pressure, and then the full braking force. Upon information and belief, the improper tuning and calibration means that the system does not allow drivers enough time to react before applying the full braking force of the vehicle and does not properly account for the size and speed of the object in front, and perhaps to the side, of the vehicle; in other words, the driver has no way of overriding a false positive and preventing this full-force application of the brakes.

65.    Similarly, Pre Sense Rear alerts the driver of potential rear collision via the use of sensors it shares with the "Side Guard" system.  "If the system senses the risk of a rear collision, it will automatically react…"[12] up to and including engaging the brakes if the vehicle is moving in reverse.

_____

[10] *See https://www.youtube.com/watch?v=Pg1TOr_UhQc* (dated July 9, 2014).
[11] *See id.*
[12] *Id.*

66.    The sensors and/or the module which controls Pre Sense can be tuned to a certain degree by the driver, by changing the sensitivity to one of three settings between "early" (the most sensitive) or late, or the "braking guard" system can be turned off completely.  However even the lowest sensitivity cannot prevent the frequent unnecessary braking and the alternative of turning the system off must be done every time the driver starts the vehicle.  As a result, Plaintiff and members of the Class have no way of repairing the AEB System Defect themselves.

67.    In fact, VW's commercials often showcase exactly how fast the AEB system can react.  For example, one commercial for the 2018 Audi A4, which VW caused to be aired in American television markets, entitled "Instincts," a man is seen driving an Audi Q7 on a county road when a deer darts in front of the vehicle.  The vehicle reacts by tightening his seatbelt, closing his sunroof, and stopping the car smoothly to prevent the collision before the man can do anything.  The voiceover announces, the vehicle "can prevent collisions, faster than – well – you."[13]  The commercial goes on to show an Audi A4 and announces that the Pre Sense system is available in the 2018 A4.

68.    In another commercial, which VW caused to be aired in major American television markets, a woman driving a 2019 Audi Q7 avoids colliding with

---

[13] *See* https://www.ispot.tv/ad/wU3i/2018-audi-a4-instincts

traffic on a busy city street because the Pre Sense system engages the brakes hard enough to slosh, but not spill, her coffee.[14]

69.    In yet another commercial which VW caused to be aired in major American television markets, a woman driving a 2018 Audi Q5 is driving out of a parking garage when a jogger crosses in front of her vehicle.  While she does not react, the Pre Sense system engages completely, preventing her from hitting the passing jogger.  The voice over states, "One moment can change a life.  Intelligent technology can protect it."[15]

70.    These advertisements are just three examples of the many similar statements in press releases, brochures, websites, and commercials VW has caused to be disseminated within the United States regarding the safety, reliability, and functionality of the AEB systems installed in Class Vehicles.

71.    In contrast to the glowing recommendations provided by VW in its advertisements, such as these videos, commercials, and brochures, the AEB systems in Class Vehicles activate without cause, startling drivers with alarms, lights, and then applying the brakes and potentially causing collisions when their vehicles suddenly stop in the road.  Conversely, the AEB systems can fail to activate when

---

[14] *See* https://www.ispot.tv/ad/IhLM/2019-audi-q7-confidence-in-chaos-coffee-t2
[15] *See* https://www.ispot.tv/ad/w3Oy/2018-audi-q5-jogger

they are most needed – when obstacles or pedestrians suddenly appear in front of a vehicle and the driver requires assistance to avoid or mitigate a collision.

72.    Upon information and belief, the AEB System Defect in Class Vehicles is be due in part to the poor calibration of the AEB system, including its sensors, and faulty programming of the AEB system control module[16] (particularly its ability to decide when to command other control modules including the antilock brake system control module and the TCM to apply the brakes and stop the vehicle in the middle of traffic).  Moreover, each supplier of the different vehicle components– the transmission, the brake system, and others may use different software and provide a different electronic control module or software for a given vehicle component. Integration of software and controls modules for system components is the responsibility of the car's manufacturer; in this case, Audi AG and/or VWAG.  If those systems are not properly integrated, the AEB system control module may interfere with the normal operation of the vehicle.

73.    VW is aware of the difficulties and problems in software integration. In 2019, VW acknowledged that its average vehicle has "about 70 electronic control modules – basically standalone computers – running software from as many as 200

---

[16] Upon information and belief, the control module with primary responsibility for the AEB system is the Driver Assist Control Module.  However, the distance control module, which controls the ACC, is also involved in the AEB system.

suppliers all of which have to be integrated by the company to make sure the vehicle operates correctly."[17]

74.    VW further acknowledged that this was an ongoing problem with its vehicles and announced an initiative to reduce the 70 computers to just 3, running on the same kind of software.  As noted by Christian Senger, the then-Volkswagen Group board of management member overseeing software development, ***VW has not properly overseen integration of software in the past***.  As quoted in *Automotive News*:

> We are super expert in parts management. But we had more or less delegated the integration of software to our Tier 1 suppliers. So for us, a lot of software was just a black box – and we see that this doesn't work anymore.[18]

75.    Despite acknowledging the problems that exist generally, that VW has been lax in relying on suppliers for software design and integration, and in making a path for the development of future vehicles without these software issues, VW has not made fixing software issues in vehicles currently on the road a priority.

76.    Instead, VW denies that any issues exist when Plaintiff and members of the Class complain and instructs their dealerships to tell consumers that their vehicles are functioning normally.  In part, this is because VW's network of dealers

---

[17] *See* Vellequette, Larry P., "VW's high-tech bombshell," Automotive News (Sept. 23, 2019) (available at https://www.autonews.com/suppliers/vws-high-tech-bombshell) (last visited July 8, 2020).
[18] *Id.*

simply does not have the training or equipment to adjust the software in any vehicle, but instead must rely on VW to provide software patches. Often, the only procedure that VW has given them to address consumer complaints about the AEB system is a "reset" or reboot of the AEB system control module, or a sensor replacement requiring further calibration. However, since the programming of the AEB system control module is insufficient to account for real-world driving conditions, this does not repair the Defect.

77.    Nor is the testing mandated by NHTSA sufficient to identify vehicles equipped with defective AEB Systems. The only autonomous emergency brake system testing performed by NHTSA simply requires that the system reduce the vehicle's speed by 9.8 mph when approaching a stationary vehicle at 25 mph in order to pass.[19] In fact, because many automakers have voluntarily agreed to put these systems into their vehicles by 2021 for light duty vehicles, and by 2025 for heavier vehicles, NHTSA has declined to institute further regulations on the AEB systems – thus entrusting the automakers to ensure that these systems work properly and do not solve one problem by causing another, and trusting them to voluntarily decline to sell any vehicles equipped with unsafe AEB systems.

---

[19] *See* Tingwall, Eric, "*We Crash Four Cars Repeatedly to Test the Latest Automatic Braking Safety Systems*," Car and Driver (Nov. 5, 2018), available at https://www.caranddriver.com/features/a24511826/safety-features-automatic-braking-system-tested-explained/

78.    Predictably, given these lax standards, automakers like VW have continued to sell vehicles equipped with AEB systems that fail to perform consistently or predictably.  Indeed, *Car and Driver*'s thorough testing revealed a shocking variation in results even in the same test vehicle. "***Driving the same car toward the same target at the same speed multiple times often produces different results***. Sometimes the car executes a perfectly timed last-ditch panic stop. Other times it brakes late, or less forcefully, or even periodically fails to do anything at all."[20]

### The AEB System Defect Poses an Unreasonable Safety Hazard

79.    The AEB System Defect causes unsafe conditions in the Class Vehicles, including, but not limited to, improperly engaging the brakes,   failing to engage the braking system at all when the obstacles do appear in front of the vehicles, and distracting drivers with false warnings when no obstacles exist.  This safety risk increases the risk of collisions and fails to reduce the incidence and severity of collisions as the AEB system was designed to do.

80.    Complaints that Class Vehicles' owners and lessees filed with NHTSA demonstrate that the defect is widespread and dangerous and that it manifests without warning.  The complaints also indicate Defendants' awareness of the problems with the AEB systems and how potentially dangerous the defect is for

---

[20] *Id.* (emphasis added).

25

consumers. Attached hereto as **Exhibit A** is just a sampling of dozens safety-related complaints that describe the AEB System Defect in Class Vehicles (spelling and grammar remain as found in the original) (Safercar.gov, *Search for Complaints* (November 20, 2020), http://www- odi.nhtsa.dot.gov/complaints/).

81.    In fact, complaints were so prevalent about the AEB system malfunctions in Audi and other VWAG models, among other vehicles, that NHTSA has opened an investigation into AEB systems in general.[21]

82.    Also, complaints posted by consumers in internet forums demonstrate that the defect is widespread and dangerous and that it manifests without warning. The complaints also indicate Defendants' awareness of the problems with the AEB System and how potentially dangerous the defect is for consumers. A sampling of these complaints are listed on **Exhibit B** attached hereto.

83.    The AEB System Defect poses an unreasonable safety risk for Class Members and other drivers and is a safety hazard to the general public and increases the risk of automobile accidents.

**VW Had Superior and Exclusive Knowledge of the AEB System Defect**

---

[21] *See* Foldy, Ben, "*As Automatic Braking Becomes More Common in Cars, So Do Driver Complaints,*" The Wall Street Journal (Aug. 27, 2019), available at https://www.wsj.com/articles/as-automatic-brakes-become-common-so-do-driver-complaints-11566898205

84.    VW had superior and exclusive knowledge of the AEB System Defect and knew or should have known that the defect was not known or reasonably discoverable by Plaintiff and Class Members before they purchased or leased the Class Vehicles.

85.    Plaintiff is informed and believes, and based thereon alleges, that before Plaintiff purchased his Class Vehicle, and since at least 2015, VW knew about the AEB System Defect through sources not available to consumers, including the following: pre-release testing data; durability testing; early consumer complaints about the AEB System Defect to Defendants' dealers who are their agents for vehicle repairs; warranty claims data related to the defect; aggregate data from VW dealers; consumer complaints to NHTSA and resulting notice from NHTSA; early consumer complaints on websites and internet forums; data from the Audi Connect system installed in some consumers' vehicles; dealership repair orders; testing conducted in response to owner or lessee complaints; and other internal sources of aggregate information about the problem.

86.    VW's internal consumer relations department and/or online reputation management services acting on VW's behalf routinely monitor the internet for complaints about its products, including complaints posted on consumer forums. These posts describe the defect at issue here. *See generally* **Exhibit B**. The fact that so many customers made similar complaints would have put VW on notice, no later

than 2016, that the complaints were not the result of user error or anomalous incidents, but instead a systemic problem with the Class Vehicles.

87.    VW also monitors customers' complaints made to NHTSA.  Federal law requires automakers including VWAG and Audi AG to be in close contact with NHTSA regarding potential auto defects, including imposing a legal requirement (backed by criminal penalties) compelling the confidential disclosure of defects and related data by automakers to NHTSA, including field reports, customer complaints, and warranty data.  *See TREAD Act*, Pub. L. No. 106-414, 114 Stat. 1800 (2000).  Upon information and belief, VWGoA is their agent in the United States for liaising with NHTSA.

88.    Automakers have a legal obligation to identify and report emerging safety-related defects to NHTSA under the Early Warning Report requirements. *Id*.  Similarly, automakers monitor NHTSA databases for consumer complaints regarding their automobiles as part of their ongoing obligation to identify potential defects in their vehicles, including safety-related defects. *Id*.   VWGoA tracks the NHTSA database to track reports of false activations with AEB systems in Audi vehicles and then transmits the information to VWAG and Audi AG on a regular basis. *See generally* **Exhibit A**.  From this source, Defendants knew or should have known that AEB-equipped vehicles were experiencing unusually high levels of false activations.

89.    Additionally, VW issues TSBs and TTs, among other communications, to its dealers in order to provide instructions on how to repair VW vehicles or respond to consumer complaints[22].  These communications standardize service throughout VW's agent dealership network, and explicitly are not meant for consumer review.  Indeed, it was only in 2012 when it became a requirement for manufacturers to provide NHTSA with a copy of these manufacturer communications.  Further, these communications often do not reveal the cause of a problem, only describe a complaint and a remedy, frequently in terms that a lay person would not understand.

90.    On February 5, 2013, VW re-issued a TSB entitled "91 Parking assistance provides false warnings."  This TSB was applicable when a customer complained that the "[p]arking aid sporadically warns of obstacles when none exist" or "[p]arking aid is inoperative or provides constant warning."  In addition to trying to find damage, correcting if the sensor is even slightly off-center, wiring issues, and other technical details, the TSB notes that "various environmental factors can cause incorrect warnings," including "high plants and curbs, gravel or cobble stone paths, pot holes, grates, sharp bends in the road, slopes, driveways, ramps, if water is on

---

[22] As described above, VWGoA is the author, publisher and distributor of such documents, but the technical information therein comes from VWAG and/or Audi AG.  Moreover, upon information and belief, VWAG and/or Audi AG approve all TSBs, TTs, and other communications with technical information that is intended to be widely distributed to authorized Audi dealerships.

the parking sensor, ice or snow on the sensor, exhaust gases under certain weather conditions, conflicting ultrasound sources including pneumatic brakes on trucks or the parking aid system of other vehicles, or fluorescent lighting." This TSB was re-issued again on January 5, 2015, July 26, 2017, and September 12, 2019, and ultimately covered all Audi vehicles from 2005 through 2020 model years.

91.    On March 15, 2013, VW issued a TSB entitled "91 ACC and braking guard warning message (DTC C110BF0)." This TSB was applicable when the instrument panel read "ACC and braking guard: unavailable at this time" and when the DTC C110BF0 (Adaptive cruise control sensor restricted view) was found in the vehicle's distance regulation control module, part number J428. The TSB informed dealerships that when any of the radar sensors does not detect an object for an extend duration, the ACC system deactivates. Conditions which could cause this included, "[l]eaves, snow, strong water spray, or direct in the field of vision or either of the radar sensors," if "radar sensors [were] pulled out of their plastic mounting clips in a minor collision which produces no visible external damage," "[w]hen the vehicle is driven through a long tunnel, reflection off the walls to the radar sensors can lead to ACC deactivation," or "[w]hen the vehicle is driven on desolate roads, the sensors do not receive reflected signals for an extended time." The dealerships were instructed to "[a]void any unnecessary replacement of the radar sensors," but instead to clean the sensors, replace the mounting clips on the sensors and recalibrate the

ACC system, or advise that the system is operating as designed.  This TSB was reissued on July 17, 2014, to update models and model years, and again on June 16, 2017 for the same reason.  Ultimately, this TSB was applicable to 2014-2018 A3, A3 Cabriolet, A4, A4 Allroad, S4, A5, S5, S5 Cabriolet, S5 Sport, RS 5 Cabriolet, and R8, 2016-2018 Q5 and SQ5, and 2011-2018 A6, A7, A8, S8, TT, and Q7 vehicles.

92.    On March 15, 2018, VW issued a TSB entitled "91 Laser for Audi Cruise Assist is restricted, DTC C12EBF3 stored in distance control module."  This TSB addressed customer complaints that the driver assistance system stopped working and may also have DTC C12EBF2 (laser for distance control, range recognition restricted) in the control module for distance control, J428. The only service offered pursuant to this TSB was to check to see if the DTC time coincides if the vehicle was wearing a third-party "car bra" or another protective cover on.  If so, the codes were to be cleared.  No other instructions were given.  This TSB was reissued on August 14, 2019, adding models and model years, such that the TSB was ultimately applicable to 2019-2020 A6, A7, A8, Q8, and Audi e-tron quattro.

93.    On February 1, 2019, VW issued a TSB entitled "91 Adaptive Cruise Assist is not available."  This TSB addressed customer complaints that the adaptive driving assistance is not available or cannot be activated, and certain DTCs were stored in the adaptive cruise control module, J1122, including DTC C12EBF1 (laser

for adaptive cruise control, malfunction), DTC B200042 (control unit faulty), or DTC B200047 (control unity faulty).  The TSB instructed dealerships to update the software.  This TSB was applicable to 2019 A7, A8, and Q8.

94.    Between April 4, 2019 and April 12, 2019, VW issued four versions of "Service Action Code: 90L2" with the subject "Driver Assist System Software." This Service Action addressed software issues with certain 2019 A6, A7, A8, and Q8.  These issues included "loss of target object at close range and erroneous drive-off warning in stop-and-go traffic" and "occasional restrictions to comfort when driving over crests and through dips."  The dealerships were instructed to perform a software update to correct the conditions.

95.    On June 18, 2019, VW issued a TSB entitled "PSS 91 Adaptive Cruise Assist is not available."  This TSB addressed customer complaints that the ACC system was not available but could become available again without the driver restarting the car, with the DTC 12EBF1 (laser for adaptive cruise control, malfunction) present.  The TSB instructed dealerships that a software bug in the control module for the laserscanner was the issue and to tell the customer "a solution is forthcoming and that no repairs are necessary at this point."  This TSB is applicable to 2019-2020 A6, A7, A8, Q8, and Audi e-tron quattro.

96.    On August 14, 2019, VW issued a TSB entitled "PSS 90 Audi adaptive light, pre sense, or Adaptive Cruise Assist malfunction, DTC B200FF9 stored in the

driver assist." This TSB was in response to when the customer complained that an Audi adaptive light or Pre Sense malfunction is displayed, or if the ACC does not work. The DTC would also be stored in the control module for driver assist systems, J1121 "DTC B200FF9 (internal problem with symptom code 2117711 and is sporadic." The issue is that "the software diagnostic is too sensitive," and no fix is currently available. As of a September 11, 2020 update to the TSB a software patch will be available in the first quarter of 2021. The codes are to be cleared and the vehicle returned to the customer. This TSB is applicable to 2019-2020 A6, A7, A8, Q8, and Audi e-tron quattro.

97.    On August 30, 2019, VW issued a TSB entitled "90 Audi adaptive light, pre sense, or vehicle assistance does not work, DTC C12B3F2 stored in the driver assist systems." This TSB addressed customer complains that the Audi adaptive light, Audi Pre Sense system error, or adaptive vehicle assistance does not work, with the DTC C12B3F2 (front camera for driver assist systems, wrong vehicle identification number, static) present in the control module for driver assist systems J1121. The TSB instructed dealerships that the software needed to be recalibrated. This TSB was applicable for 2019-2020 A6, A7, Q6, Audi e-tron quattro, and A8.

98.    On September 30, 2019, VW issued a TSB entitled "90 Emergency Assist: unexpected seatbelt tugging with brief reductions in speed." This TSB was a response to customers complaining that the vehicle was tugging on the seatbelts

and reducing speed with "[n]o obvious causes for those symptoms like vehicles driving in front of the customer's vehicle are apparent."  Some DTCS might be stored in the driver assistance control module, J1121.  According to the TSB, "[i]f too little steering input is observed over speed and environment depending on the time interval, the system assumes the driver to be incapacitated and started a warning cascade in order to regain the driver's attention….it can falsely determine the driver to be incapacitated if not enough momentum is perceived on the steering wheel.  This might happen on long straight roads or if the driver does not firmly grip the steering wheel."  The TSB cautioned dealerships not to perform repairs, and that any repairs for this concern may be denied.  Instead, the dealerships were instructed to "explain the behavior of the emergency assist to the customer. The vehicle is functioning as designed."

99.    Further, even prior to bringing the Class Vehicles to market, VW was cognizant of the difficulty in integrating the software of all systems required for the AEB systems to function as advertised and integrating the different modules involved, including the driver assist control module, the adaptive cruise control module and the distance control module.  As a result, despite producing commercials and brochures that overstate the effectiveness and functionality of its AEB systems, warnings in the owners' manuals for the Class Vehicles are vague and incompletely describe the limitations of the system.

100.    To the extent warnings are issued are issued in owners' manuals made available to consumers after the vehicle purchase or lease, they do not inform Plaintiffs and members of the Class that the AEB systems in the Class Vehicles will frequently engage without cause, jerking the vehicles to a stop and leaving the driver and passengers more suspectable to a collision from traffic. Indeed, unlike many manufacturers, VW does not make its owners' manuals available online to consumers until after the vehicle is purchased. These vague warnings, buried in Owners' Manuals hundreds of pages long, are not specific enough or prominent enough to overcome the perception of functionality that VW has promogulated in its brochures and commercials.

101.    Moreover, these warnings do not inform Plaintiff and members of the Class that their Class Vehicles may react differently each time it encounters the same situation, so that they are unable to even learn when their vehicle may malfunction. These warnings do not inform Plaintiff and members of the Class that their AEB systems may stop the car unnecessarily when the car is performing such mundane tasks as driving past a home that has a trash can in front of it, exiting a driveway, driving onto a freeway, or navigating a curve in the road.

102.    VW has also been alerted to the widespread problems with the AEB System from various lawsuits filed both in the United States and in other countries where Volkswagen, Skoda, and Audi-branded vehicles, with substantially similar

AEB systems installed, are sold. Upon information and belief, VWGoA has had to buyback many Audi vehicles in the United States due to lawsuits brought under Lemon Law statutes, and VWAG and Audi AG are aware of many lawsuits in other countries related to the malfunctioning of the AEB systems in Volkswagen, Skoda and Audi-branded vehicles. Upon information and belief, many of the hardware and software components in Audi, VW, and Skoda are substantially similar, if not identical.

103.   The alleged AEB System Defect was inherent in each Class Vehicle and was present in each Class Vehicle at the time of sale.

104.   The existence of the AEB System Defect is a material fact that a reasonable consumer would consider when deciding whether to purchase or lease a VW vehicle that was equipped with an AEB system. Had Plaintiff and other Class Members known that the Class Vehicles had the AEB System Defect, they would not have purchased or leased the Class Vehicles or would have paid less for them.

105.   Reasonable consumers, like Plaintiff, reasonably expect that a vehicle's AEB system will function in a manner that will not pose a safety hazard and is free from defects that actually interfere with its role as a safety feature and make the vehicle unsafe. Plaintiff and Class Members further reasonably expect that VW will not sell or lease vehicles with known safety defects, such as the AEB System Defect, and will disclose any such defects to its consumers when it learns of them. They did

not expect VW to fail to disclose the AEB System Defect to them and to continually deny the existence of the defect.

**VW Has Actively Concealed the AEB System Defect**

106.   While VW has been fully aware of the AEB System Defect in the Class Vehicles, it actively concealed the existence and nature of the defect from Plaintiff and Class Members at the time of purchase, lease, repair, and thereafter. Specifically, VW failed to disclose or actively concealed at and after the time of purchase, lease, or repair:

a)   any and all known material defects or material nonconformity of the Class Vehicles, including the defects relating to the AEB systems;

b)   that the Class Vehicles, including their AEB systems, were not in good working order, were defective, and were not fit for their intended purposes; and

c)   that the Class Vehicles were defective, despite the fact that VW learned of such defects through alarming failure rates, customer complaints, and other internal sources, as early as 2013.

107.   In fact, even before releasing the Class Vehicles on the market, VW knew about the AEB System Defect.  Nevertheless, VW never disclosed the AEB System Defect to Class Members.

108.    As a result of the AEB System Defect, VW and its authorized dealers were inundated with complaints regarding the AEB System Defect.

109.    On information and belief, the VW has not made fixing the software issues that cause the AEB system malfunctions as described herein a priority, instead devoting significant resources to the software concerns of future vehicles.

110.    When consumers present the Class Vehicles to authorized VW dealers for repair of the AEB System Defect, rather than repair the problem under warranty, VW has instructed dealers to deny that the AEB System Defect exists.  Moreover, because the AEB System Defect is software related, the Audi-authorized dealerships are neither equipped nor trained to provide a remedy.

111.    To this day, VW still has not notified Plaintiff and all Class Members that the Class Vehicles suffer from a systemic defect that causes the AEB systems to malfunction, to the detriment of the safety of drivers, passengers, and the general public.

## CLASS ACTION ALLEGATIONS

112.    Plaintiff brings this lawsuit as a class action on behalf of himself and all others similarly situated as members of the proposed Class and Sub-Class pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2) and/or 23(b)(3).  This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions.

113.    The Class and Sub-Class are defined as:

**Class**: All individuals residing in the United States of America, including its territories, who purchased or leased any model year 2015-2020 Audi vehicle equipped with an AEB system (the "Class Vehicles").

**Georgia Sub-Class**: All members of the Class who purchased or leased their Class Vehicles in the State of Georgia.

114.    Excluded from the Class and Sub-Class are: (1) Defendants, any entity or division in which Defendants have a controlling interest, and their legal representatives, officers, directors, assigns, and successors; (2) the Judge to whom this case is assigned and the Judge's staff; (3) any Judge sitting in the presiding state and/or federal court system who may hear an appeal of any judgment entered; and (4) those persons who have suffered personal injuries as a result of the facts alleged herein. Plaintiff reserves the right to amend the Class and Sub-Class definitions if discovery and further investigation reveal that the Class and Sub-Class should be expanded or otherwise modified.

115.    There is a well-defined community of interest in the litigation and the Class and Sub-Class are readily ascertainable.

116.    Numerosity: Although the exact number of prospective class members is uncertain and can only be ascertained through appropriate discovery, upon information and belief, hundreds of thousands of Class Vehicles have been sold in

the United States. As such, the number of prospective class members is great enough such that joinder is impracticable. The disposition of prospective class members' claims in a single action will provide substantial benefits to all parties and to the Court. The prospective class members are readily identifiable from information and records in Defendants' possession, custody, or control, as well as from records kept by the departments of motor vehicles of the various states.

117. <u>Typicality</u>: Plaintiff's claims are typical of the claims of all prospective class members in that Plaintiff and the prospective class members purchased and leased a Class Vehicle designed, manufactured, and distributed by VW and equipped with AEB Systems. Plaintiff and all prospective class members have been damaged by Defendants' misconduct in that the Class Vehicles' suffer from the AEB System Defect and Class Members have incurred or will incur the cost of overpaying for the Class Vehicles and repairing or replacing Class Vehicles that have been damaged as a result of the AEB System Defect. Furthermore, the factual bases of VW's misconduct are common to all prospective class members and represent a common thread resulting in injury to all prospective class members.

118. <u>Commonality</u>: There are numerous questions of law and fact common to Plaintiff and the prospective class members that predominate over any question affecting individual prospective class members. These common legal and factual issues include the following:

a)    Whether the Class Vehicles suffer from the AEB System Defect;

b)    Whether the AEB System Defect constitutes an unreasonable safety risk;

c)    Whether and when Defendants knew about the AEB System Defect;

d)    Whether Defendants knew or reasonably should have known of the AEB System Defect before selling and leasing Class Vehicles to prospective class members;

e)    Whether the AEB System Defect constitutes a material fact;

f)    Whether Defendants have a duty to disclose their knowledge of the AEB System Defect to Plaintiff and prospective class members;

g)    Whether Defendants breached the implied warranty of merchantability and their written warranties pursuant to the Magnusson-Moss Warranty Act;

h)    Whether Defendants breached their written warranties;

i)    Whether Defendants breached the implied warranty of merchantability under Georgia law;

j)    Whether Plaintiff and the prospective class members are entitled to equitable relief, including, but not limited to, a preliminary and/or permanent injunction;

k)      Whether Defendants should be declared financially responsible for notifying all prospective class members of the AEB System Defect and for expenses of repairing the AEB System Defect;

l)      Whether Defendants are obligated to inform prospective class members of their right to seek reimbursement for having paid to diagnose, repair, or replace the defective headlight assemblies; and

m)     Whether damages, restitution, compulsory or other relief are warranted.

119.    <u>Adequate Representation</u>:  Plaintiff will fairly and adequately protect prospective class members' interests. Plaintiff has retained attorneys experienced in prosecuting class actions, including consumer and product defect class actions, and Plaintiff intends to prosecute this action vigorously.

120.    <u>Predominance and Superiority</u>: Plaintiff and the Class Members have all suffered and will continue to suffer harm and damages as a result of Defendants' unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the controversy.  Absent a class action, most Class Members would likely find the cost of   litigating their claims prohibitively high and would therefore have no effective remedy at law. Because of the relatively small size of the individual Class Members' claims, it is likely that only a few Class Members could afford to seek legal redress for Defendants' misconduct. Absent a class action, Class Members will continue to incur damages, and Defendants'

misconduct will continue without remedy.  Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the courts and the litigants and will promote consistency and efficiency of adjudication.

121.    In the alternative, the Class may be certified because:

a)    The prosecution of separate actions by the individual members of the Class would create a risk of inconsistent or varying adjudication with respect to individual Class Members, which would establish incompatible standards of conduct for Defendant;

b)    the prosecution of separate actions by individual Class Members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class Members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and

c)    Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final and injunctive relief with respect to the members of the Class as a whole.

## CLAIMS

### FIRST CAUSE OF ACTION
### VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT,
### 15 U.S.C. § 2303, *et seq.*
### (By Plaintiff on Behalf of the Class Against All Defendants)

119.   Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 111, *supra*.

120.   Plaintiff brings this cause of action on behalf of himself and the Class against all Defendants, or in the alternative on behalf of the Georgia Sub-Class.

121.   The Class Vehicles are a "consumer product" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

122.   Plaintiff and Class Members are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

123.   Defendants are both "supplier[s]" and "warrantor[s]" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

124.   VWGoA's express warranty is a "written warranty" within the meaning of 15 U.S.C. § 2301(6).

125.   As set forth *supra* and incorporated by reference, VWGoA provided a 50,000 mile or 4-year, whichever is longer, New Vehicle Limited Warranty and Powertrain Limited Warranty to consumers.  These warranties were transferable to subsequent purchasers.

126.   VWGoA breached the express warranties by selling and leasing Class Vehicles with the AEB System Defect, requiring repair or replacement within the warranty period, and refusing to honor the express warranty by repairing or

replacing, free of charge, any system components that contribute to the AEB System Defect.

127.    VWGoA's breach of the express warranties has deprived the Plaintiff and Class members of the benefit of their bargain by failing to provide Class Vehicles a functional AEB system.

128.    VW also provided Plaintiff and Class Members with an implied warranty that the Class Vehicles and their components and parts are merchantable, pass without objection in the trade, are fit for the ordinary purposes for which they were sold, are adequately labeled, and conform to the promises and affirmations on the label.  However, the Class Vehicles are not merchantable because they are not fit for their ordinary purpose of providing reasonably reliable and safe transportation because, *inter alia*, the Class Vehicles suffered from an inherent defect at the time of sale and thereafter.  The Class Vehicles would not pass without objection in the trade, are not adequately labeled and do not comfort the promises and affirmations on the label because the Class Vehicles have AEB systems which are prone to forcing the vehicle to brake when there are not obstacles ahead and also fail to engage as described when there are obstacles ahead.

129.    VW impliedly warranted that the Class Vehicles were of merchantable quality and fit for their intended use.  This implied warranty included, among other things: (i) a warranty that the Class Vehicles, which were manufactured, supplied,

distributed, and/or sold by VW, would provide safe and reliable transportation; (ii) a warranty that the Class Vehicles would be fit for their intended use; (iii) that the Class Vehicles would pass without objection in the trade; (iv) that Class Vehicles are adequately labeled; and (v) that Class Vehicles would conform the promises and affirmations on their labels.

130.   Contrary to the applicable implied warranties, the Class Vehicles at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiff and Class Members with reliable, durable, and safe transportation, would not pass without objection in the trade, were not adequately labeled, and did not conform to the promises and affirmation on their labels.  Instead, the Class Vehicles are defective due to the AEB System Defect.

131.   The alleged AEB System Defect is inherent and was present in each Class Vehicle at the time of sale.

132.   Because of VW's breach of the applicable implied warranties, owners and/or lessees of the Class Vehicles suffered an ascertainable loss of money, property, and/or value of their Class Vehicles. Additionally, because of the AEB System Defect, Plaintiff and the Class Members were harmed and suffered actual damages in that they overpaid for the Class Vehicles, the Class Vehicles suffer a diminution in value, and/or they were involved in collisions.

133.   Plaintiff and members of the Class have had sufficient direct dealings with either VW or its agents (dealerships and technical support) to establish privity of contract between VW, on one hand, and Plaintiff and each of the other Class Members on the other hand.  Nonetheless, privity is not required here because Plaintiff and each of the other Class Members are intended third-party beneficiaries of contracts between VW and its distributors and dealers, and specifically, of VWGoA's express warranties.  The dealers were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit the consumer only.

134.   Affording VW a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile. At the time of sale or lease of each Class Vehicle and all relevant times thereafter, VW knew or was reckless in not knowing, of the lack of truth in their statements about safety, reliability, and functionality of the AEB system, of the material omissions concerning the standard, quality or grade of the Class Vehicles and the presence of the AEB System Defect and associated safety risk, but failed to repair or replace the defective fuel system and/or disclose the defect. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiff resort to an informal dispute resolution procedure and/or afford VW additional reasonable

opportunities to cure its breach of warranties is excused and thereby is deemed satisfied.

135.   Plaintiff and members of the Class would suffer economic hardship if they returned their Class Vehicles, but did not receive the return of all payments made by them to VW and/or their agents.  Thus, Plaintiffs and members of the Class have not re-accepted their Class Vehicles by retaining them.

136.   Defendants were provided notice by letter dated October 21, 2020 that Plaintiff would pursue a claim under the MMWA on behalf of a class.

137.   The amount in controversy of Plaintiff's individual claims meets or exceeds the sum or value of $25,000.  In addition, the amount in controversy meets or exceeds the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit.

138.   VW has been afforded a reasonable opportunity to cure its breaches, including when Plaintiff and Class Members brought their vehicles in for diagnoses and repair of the AEB System Defect.

139.   As a direct and proximate cause of VW's breach of written and implied warranties, Plaintiff and Class Members sustained and incurred damages and other losses in an amount to be determined at trial. VW's conduct damaged Plaintiff and Class Members, who are entitled to recover actual damages, consequential damages,

specific performance, diminution in value, costs, attorneys' fees, and/or other relief as appropriate.

**SECOND CAUSE OF ACTION**
**VIOLATION OF GEORGIA'S FAIR BUSINESS PRACTICES ACT,**
**GA. CODE ANN. § 10-1-390, *et seq*.**
**(On Behalf of Plaintiff Pieras and the Georgia Sub-Class Against All**
**Defendants)**

140.    Plaintiff Pieras incorporates by reference the allegations contained in paragraphs 1 through 111, *supra*.

141.    Plaintiff Pieras brings this cause of action on behalf of himself and the Georgia Sub-Class.

142.    Georgia's Fair Business Practices Act ("GFBPA") declares "[u]nfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce" to be unlawful.  Ga. Code Ann. § 10-1-393(a).

143.    Unfair or deceptive acts or practices are defined to include, "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have," "[r]epresenting that goods or services are of a particular standard, quality, or grade … if they are of another," and [a]dvertising goods or services with intent not to sell them as advertised." Ga. Code Ann. § 10-1-393(b).

144.    In the course of their business, Defendants concealed and suppressed material facts concerning the Class Vehicles. By failing to disclose and actively

49

concealing that the Class Vehicles contained the AEB System Defect, by marking their Class Vehicles as safe and of high quality, and by presenting themselves as a reputable manufacturer and distributor that values safety and stands behind its vehicles after they were sold, Defendants engaged in unfair business practices as defined by the GFBPA.

145.    Defendants failed to disclose information about the propensity of the AEB System Defect to cause the vehicle to unnecessarily warn the driver or apply the brakes despite the lack of an obstacle, or fail to respond as intended and advertised when an obstacle does suddenly appear.  Further, Defendants knew, or should have known, that sudden, unnecessary braking or a failure to brake when necessary could cause the Class Vehicles to become involved in collisions or other accidents, putting vehicle operators, passengers and other motorists at risk for injury.  Defendants deliberately concealed and failed to disclose this material information to ensure that consumers would purchase the Class Vehicles and spend money on useless remedies and repairs.

146.    Instead, Defendant marketed the Class Vehicles as being safe and reliable transportation, and having fully functional and reliable AEB systems.  In fact, the Class Vehicles are not safe and reliable transportation, and the AEB systems do not react predictably, apply the brakes unnecessarily, and/or fail to activate when an obstacle is present.

147.   Defendants violated the GFBPA by: (1) representing that the Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; (2) representing that the Class Vehicles are of a particular standard, quality, and grade when they are not; and (3) advertising the Class Vehicles with the intent not to sell them as advertised.

148.   Defendants engaged in misleading, false, unfair, or deceptive practices, including, but not limited to, deception, fraud, false pretense, false promise, misrepresentation and the knowing concealment, suppression and omission of material facts concerning the Class Vehicles' AEB System Defect and corresponding safety risk in connection with the sale and/or advertisement of Class Vehicles.  This includes denying the existence of the AEB System Defect to consumers, even when investigating the causes of why the Class Vehicles would brake unnecessarily and/or fail to brake, failing to provide repairs under the express warranties provided with the sale of the Class Vehicles for the AEB System Defect, and by presenting themselves as a reputable manufacturer that valued safety and stood behind its vehicles after they were sold.

149.   Defendants fraudulently, intentionally, negligently and/or recklessly misrepresented to Plaintiff Pieras and the members of the Georgia Sub-Classthe characteristics of the Class Vehicles with respect to materials, manufacture, safety, and reliability.

150.   Defendants intended that Plaintiff Pieras and members of the Georgia Sub-Classwould, in the course of their decision to expend money in purchasing, leasing and/or repairing Class Vehicles, reasonably rely upon misrepresentations, misleading characterizations and material omissions concerning the quality of the Class Vehicles and their components with respect to materials, workmanship, and manufacture.

151.   Information regarding the AEB System Defect as described herein is material to consumers in that the AEB System Defect can cause a Class Vehicle to brake abruptly while being driven, and as such, poses a safety risk.

152.   If Defendants had not concealed the AEB System Defect from Plaintiff Pieras and members of the Georgia Sub-Classwithin the express warranty period, the AEB System Defect could have been repaired without cost to purchasers as promised under the original warranty.

153.   Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles' ability to provide safe and reliable transportation with the intent to mislead Plaintiff Pieras and members of the Georgia Sub-Class.

154.   Defendants knew or should have known that its conduct violated the GFBPA.

155. Defendants owed Plaintiff Pieras and members of the Georgia Sub-Class a duty to disclose the existence of the AEB System Defect and its corresponding safety risk because they:

        a.     Possessed exclusive knowledge that they were manufacturing, distributing, and selling vehicles throughout the United States that possessed the AEB System Defect;

        b.     Intentionally concealed the existence of the AEB System Defect from Plaintiff Pieras and members of the Georgia Sub-Class; and/or

        c.     Made incomplete and misleading representations about the Class Vehicles' ability to provide safe, reliable transportation while purposefully withholding material facts that contradicted these representations.

156. As a proximate and direct result of Defendants' unfair and deceptive trade practices, Plaintiff Pieras and members of the Georgia Sub-Class purchased or leased the Class Vehicles and suffered an ascertainable loss and financial harm in the form of actual damages in the amount of overpaying for defective Class Vehicles, the diminution of value for the Class Vehicles, the costs of ineffectual repairs, and other substantial monetary damages and inconvenience.

157.   Defendants had an ongoing duty to all Audi customers to refrain from unfair and deceptive practices under the GFBPA.  Defendants' violations present a continuing risk to Plaintiff Pieras and members of the Georgia Sub-Class, as well as to the general public.  Defendants' unlawful acts and practices complained of here affect the public interest.

158.   Pursuant to statute, Plaintiff Pieras provided notice of his claim by letter dated October 21, 2020.  Plaintiff Pieras and members of the Georgia Sub-Classseek all damages and relief to which they are entitled to because VW failed to remedy its unlawful conduct within the requisite time period.

159.   Plaintiff Pieras and members of the Georgia Sub-Classseek monetary relief against Defendants in the amount of damages, exemplary damages for intentional violations, injunctive relief, attorneys' fees, and any other just and proper relief available under Ga. Code Ann. § 10-1-399(a).

## THIRD CAUSE OF ACTION
## VIOLATION OF THE GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT,
## GA. CODE ANN. § 10-1-370, *et seq*.
### (On Behalf of Plaintiff Pieras and the Georgia Sub-Class
### Against All Defendants)

160.   Plaintiff Pieras incorporates by reference the allegations contained in paragraphs 1 through 111, *supra*.

161.    Plaintiff Pieras brings this cause of action on behalf of himself and the Georgia Sub-Class.

162.    The Georgia Uniform Deceptive Trade Practices Act ("GUDTPA") prohibits "deceptive trade practices," which include the "misrepresentation of standard or quality of goods or services," and "engaging in any other conduct which similarly creates a likelihood of confusion or of misunderstanding." Ga. Code Ann. § 10-1-372(a). Defendants engaged in unfair and deceptive practices that violated the GUDTPA as described above.

163.    Defendants, Plaintiff Pieras and the members of the Georgia Sub-Classare "persons" within the meaning of the GUDTPA, GA. Code Ann. § 10-1-471(5).

164.    Defendant participated in the misleading, false, or deceptive practices that violated the GUDTPA. By failing to disclose and actively concealing that the Class Vehicles contained the AEB System Defect, by marketing their Class Vehicles as safe and of high quality, and by presenting themselves as a reputable manufacturer that valued safety and stood behind its vehicles after they were sold, Defendants engaged in deceptive business practices prohibited by the GUDTPA.

165.    In the course of their business, Defendants willfully failed to disclose and actively concealed the AEB System Defect discussed herein and other engaged in activities with a tendency or capacity to deceive. Defendants also engaged in

unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with the intent that others rely upon such concealment, suppression, or omission, in connection with the sale of the Class Vehicles.

166.  Defendants knew or should have known for years about the AEB System Defect in the Class Vehicles but failed to disclose that the Class Vehicles contained the AEB System Defect.  Defendants also knew they were manufacturing, selling, and distributing Class Vehicles that did not perform as advertised and jeopardized the safety of the Vehicle's occupants, but failed to disclose this information to Plaintiff Pieras and the members of the Georgia Sub-Class. Defendants failed to disclose information about the propensity of the AEB System Defect to cause the vehicle unnecessarily warn the driver or apply the brakes despite the lack of an obstacle, or fail to respond as intended and advertised when an obstacle does suddenly appear.  Further, Defendants knew, or should have known, that sudden, unnecessary braking or a failure to brake when necessary could cause the Class Vehicles to become involved in collisions or other accidents, putting vehicle operators, passengers and other motorists at risk for injury.  Defendants deliberately concealed and failed to disclose this material information to ensure that consumers would purchase the Class Vehicles and spend money on useless remedies and repairs.

167.    Defendants committed unconscionable, deceptive and unfair trade practices, including, but not limited to, deception, fraud, false pretense, false promise, misrepresentation and the knowing concealment, suppression and omission of material facts concerning the AEB System Defect in Class Vehicles and the corresponding safety risk in connection with the sale and/or advertisement of Class Vehicles.

168.    Defendants fraudulently, intentionally, negligently and/or recklessly misrepresented to Plaintiff Pieras and members of the Georgia Sub-Classthe characteristics of the Class Vehicles with respect to operating costs, materials, manufacture, durability, design, functionality, and reliability.

169.    Defendants intended that Plaintiff Pieras and members of the Georgia Sub-Classwould, in the course of their decision to expend money in purchasing, leasing, and/or repairing the Class Vehicles, reasonably rely upon misrepresentations, misleading characterizations and material omissions concerning the quality, functionality, and reliability of the Class Vehicles with respect to material, workmanship, design, and manufacture.

170.    Information regarding the AEB System Defect as described herein is material to consumers in that the AEB System Defect results in making the AEB System nonfunctional and/or unpredictable.  Further, Defendants knew, or should have known, that sudden, unnecessary braking or a failure to brake when necessary

could cause the Class Vehicles to become involved in collisions or other accidents, putting vehicle operators, passengers and other motorists at risk for injury.  As such that the AEB System Defect poses a safety risk.

171.   If Defendants had not concealed the AEB System Defect from Plaintiff Pieras and members of the Georgia Sub-Classwithin the express warranty period, the AEB System Defect could have been repaired without cost to purchasers as promised under the original warranty.

172.   Defendants violated the GUDTPA by failing to inform Class Vehicle owners and/or lessees prior to purchase and/or lease during the warranty period that Class Vehicles were defectively designed and/or manufactured, contained the AEB System Defect, and/or were not capable of being repaired.

173.   Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiff Pieras and the members of the Georgia Sub-Class.

174.   Defendant owed Plaintiff Pieras and members of the Georgia Sub-Classa duty to disclose the existence of the AEB System Defect and its corresponding safety risk because they:

a.   Possessed exclusive knowledge that they were manufacturing, distributing, and selling vehicles throughout the United States that possessed the AEB System Defect;

b.    Intentionally concealed the existence of the AEB System Defect from Plaintiff Pieras and members of the Georgia Sub-Class; and/or

c.    Made incomplete and misleading representations about the Class Vehicles' ability to provide safe, reliable transportation while purposefully withholding material facts that contradicted these representations.

175.    Defendants' concealment of the true characteristics of the Class Vehicles was material to Plaintiff Pieras and the members of the Georgia Sub-Class.

176.    As a proximate and direct result of Defendants' unfair and deceptive trade practices, Plaintiff Pieras and members of the Georgia Sub-Class purchased or leased Class Vehicles and suffered an ascertainable loss and financial harm.

177.    Plaintiff Pieras and members of the Georgia Sub-Class experienced ascertainable losses in the form of actual damages in the amount of the cost to attempt to repair the AEB System Defect, replacement of the damaged related system components, diminution of Class Vehicle resale value, increased repair and maintenance costs, and other substantial monetary damages and inconvenience.

178.    Plaintiff Pieras provided notice of his claims by letter dated October 21, 2020.

179.   Plaintiff Pieras and members of the Georgia Sub-Classseek monetary relief against Defendants in the amount of actual damages, injunctive relief, attorneys' fees, and any other just and proper relief available under Ga. Code Ann. § 10-1-373.

### FOURTH CAUSE OF ACTION
### BREACH OF EXPRESS WARRANTY
### (On Behalf of Plaintiff and the Georgia Sub-Class
### Against VWGoA)

180.   Plaintiff Pieras incorporates by reference the allegations contained in paragraphs 1 through 111, *supra*.

181.   Plaintiff Pieras brings this cause of action against VWGoA on behalf of himself and the Georgia Sub-Class.

182.   VWGoA is and was at all relevant times a "merchant" with respect to motor vehicles under Ga. Code Ann. §§ 11-2-104(1) and 11-2A-103(3), and a "seller" of motor vehicles under § 11-2-103(1)(d).

183.   With respect to leases, VWGoA is and was at all relevant times a "lessor" of motor vehicles under Ga. Code Ann. § 11-2A-103(1)(p).

184.   The Class Vehicles are and were at all relevant times goods within the meaning of Ga. Code Ann. §§ 11-2-105(1) and 11-2A-103(1)(h).

185.   VWGoA provided all purchasers and lessees of the Class Vehicles with an express warranty described *infra*, which became a material part of the bargain. Accordingly, VWGoA's express warranty is an express warranty under Georgia law.

186.   The AEB Systems were installed and calibrated in the Class Vehicles by VW and are covered by the express warranty.

187.   As set forth *supra* and incorporated by reference, VWGoA provided a 50,000 mile or 4 year, whichever is longer, New Vehicle Limited Warranty and Powertrain Limited Warranty to consumers.  These warranties were transferable to subsequent purchasers.

188.   VWGoA breached the express warranties by selling and leasing Class Vehicles with the AEB System Defect, requiring repair or replacement of the Class Vehicles within the warranty period, and refusing to honor the express warranty by repairing or replacing, free of charge, the Class Vehicles.

189.   Plaintiff Pieras and members of the Georgia Sub-Classhave had sufficient direct dealings with either VWGoA or its agents (dealerships and technical support) to establish privity of contract between VWGoA, on one hand, and Plaintiff Pieras and each of the other Georgia Sub-ClassMembers on the other hand. Nonetheless, privity is not required here because Plaintiff Pieras and each of the other Georgia Sub-ClassMembers are intended third-party beneficiaries of contracts between VWGoA and its distributors and dealers, and specifically, of VWGoA's

express warranties. The dealers were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit the consumer only.

190. Any attempt by VWGoA to disclaim or limit recovery to the terms of the express warranty is unconscionable and unenforceable here. Specifically, the warranty limitation is unenforceable because VWGoA knowingly sold or leased a defective product without informing consumers about the AEB System Defect. The time limits are unconscionable and inadequate to protect Plaintiff Pieras and members of the Georgia Sub-Class. Among other things, Plaintiff and members of the Georgia Sub-Classdid not determine these time limitations and/or did not know of other limitations not appearing in the text of the warranties, the terms of which unreasonably favored VWGoA. A gross disparity in bargaining power and knowledge of the extent, severity, and safety risk of the AEB System Defect, existed between VWGoA and members of the Georgia Sub-Class.

191. Further, the limited warranty promising to repair and/or correct a manufacturing or workmanship defect fails of its essential purpose because the contractual remedy is insufficient to make Plaintiff Pieras and the members of the Georgia Sub-Classwhole, because, on information and belief, VWGoA have failed

and/or have refused to adequately provide the promised remedies, i.e. a repair, within a reasonable time.

192.    Plaintiff Pieras and members of the Georgia Sub-Classwere not required to notify VWGoA of the breach or were not required to do so because affording VWGoA a reasonable opportunity to cure its breach of written warranty would have been futile. VWGoA was also on notice of the AEB System Defect from its own pre-production testing, from the early complaints and service requests it received from Class Members, from repairs and/or replacements of AEB system and other related system components, and from other internal sources.

193.    VWGoA was further provided notice of its breach of express warranties by Plaintiff Pieras by letter dated October 21, 2020.  Plaintiff Pieras also provided notice of express warranties when he took his Class Vehicle to Audi South Atlanta, a VWGoA-authorized provider of warranty repairs.  Despite these notices, VWGoA failed to cure the breach of express warranties within an adequate time.

194.    As a direct and proximate cause of VWGoA's breach of express warranties, Plaintiff Pieras and the other Georgia Sub-Class Members have suffered, and continue to suffer, damages, including economic damages at the point of sale or lease. Additionally, Plaintiff Pieras and the other Class Members have incurred or will incur economic damages at the point of repair in the form of the cost of repair

to the AEB system, the related systems, and/or any collisions caused in whole or in part by the AEB System Defect.

195.   Plaintiff Pieras and the other Georgia Sub-ClassMembers are entitled to legal and equitable relief against VWGoA, including actual damages, consequential damages, specific performance, attorneys' fees, costs of suit, and other relief as appropriate.

## SIXTH CAUSE OF ACTION
## BREACH OF IMPLIED WARRANTY
### (By Plaintiff Pieras on Behalf of the Georgia Sub-Class
### Against All Defendants)

196.   Plaintiff Pieras incorporates by reference the allegations contained in paragraphs 1 through 111, *supra*.

197.   Plaintiff Pieras brings this Count on behalf of himself and members of the Georgia Sub-Class.

198.   Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Ga. Code Ann. §§ 11-2-104(1) and 11-2A-103(3), and "seller[s]" of motor vehicles under § 11-2-103(1)(d).

199.   With respect to leases, Defendants are and were at all relevant times "lessor[s]" of motor vehicles under Ga. Code Ann. § 11-2A-103(1)(p).

200.   The Class Vehicles are and were at all relevant times goods within the meaning of Ga. Code Ann. §§ 11-2-105(1) and 11-2A-103(1)(h).

201.   VW provided Plaintiff Pieras and Georgia Sub-ClassMembers with an implied warranty that the Class Vehicles and their components and parts are merchantable, pass without objection in the trade, are fit for the ordinary purposes for which they were sold, are adequately labeled, and conform to the promises and affirmations on the label.  However, the Class Vehicles are not merchantable because they are not fit for their ordinary purpose of providing reasonably reliable and safe transportation because, *inter alia*, the Class Vehicles suffered from an inherent defect at the time of sale and thereafter.  The Class Vehicles would not pass without objection in the trade, are not adequately labeled and do not conform to the promises and affirmations on the label because the Class Vehicles have AEB systems that are prone to forcing the vehicle to brake when there are not obstacles ahead and also fail to engage as described when there are obstacles ahead.

202.   VW impliedly warranted that the Class Vehicles were of merchantable quality and fit for their intended use.  This implied warranty included, among other things: (i) a warranty that the Class Vehicles, which were manufactured, supplied, distributed, and/or sold by VW, would provide safe and reliable transportation; (ii) a warranty that the Class Vehicles would be fit for their intended use; (iii) that the Class Vehicles would pass without objection in the trade; (iv) that Class Vehicles are adequately labeled; and (v) that Class Vehicles would conform the promises and affirmations on their labels.

203.   Contrary to the applicable implied warranties, the Class Vehicles and their fuel systems at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiff Pieras and Georgia Sub-ClassMembers with reliable, durable, and safe transportation, would not pass without objection in the trade, were not adequately labeled, and did not conform to the promises and affirmation on their labels.  Instead, the Class Vehicles are defective due to the AEB System Defect.

204.   Plaintiff Pieras and members of the Georgia Sub-Classhave had sufficient direct dealings with either VW or its agents (dealerships and technical support) to established privity of contract between VW, on one hand, and Plaintiff Pieras and each of the other Georgia Sub-ClassMembers on the other hand. Nonetheless, privity is not required here because Plaintiff Pieras and each of the other Georgia Sub-ClassMembers are intended third-party beneficiaries of contracts between VW and its distributors and dealers, and specifically, of VW's implied warranties.  The dealers were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit the consumer only.

205.   Plaintiff Pieras and members of the Georgia Sub-Classwere not required to notify VW of the breach or were not required to do so because affording

VW a reasonable opportunity to cute its breach of implied warranty would have been futile. VW was also on notice of the AEB System Defect from its own pre-production testing, from the early complaints, service requests, and replacement part orders it received from its network of dealerships and Class Members, from repairs and/or replacements of the starter and other related system components under warranty, and from other internal sources, including communications and complaints from its network of dealerships.

206.   Plaintiff Pieras provided notice to VW of its breach of implied warranties by letter dated October 21, 2020. Plaintiff Pieras and members of the Georgia Sub-Classalso provided notice of the breach of implied warranties when they took their Class Vehicle to Audi dealerships which are VW-authorized provider of warranty repairs. In addition, Defendants were provided with notice of these issues by numerous NHTSA and consumer complaints filed against VW, including the instant Complaint and similar legal proceedings, and has actual knowledge of the AEB System Defect.

207.   The alleged AEB System Defect is inherent and was present in each Class Vehicle at the time of sale.

208.   Because of VW's breach of the applicable implied warranties, owners and/or lessees of the Class Vehicles suffered an ascertainable loss of money, property, and/or value of their Class Vehicles. Additionally, because of the AEB

System Defect, Plaintiff Pieras and Georgia Members were harmed and suffered actual damages in that the Class Vehicles' are defective, that they overpaid for defective vehicles, and that the Class Vehicles' AEB Systems increase their chances of being involved in a collision by activating without cause and failing to activate when they should.

209.    As a direct and proximate result of Defendants' breach of the implied warranties of merchantability, Plaintiff Pieras and members of the Georgia Sub-Classhave been damaged in an amount to be proven at trial.

**SEVENTH CAUSE OF ACTION**
**UNJUST ENRICHMENT**
**(By Plaintiff on Behalf of the Class, or Alternatively on behalf of the Georgia against All Defendants)**

210.    Plaintiff Pieras incorporates by reference the allegations contained in paragraphs 1 through 111, *supra*.

211.    To the extent required by law, this claim is pled in the alternative to legal claims, as permitted under Federal Rule of Civil Procedure 8.

212.    Plaintiff brings this cause of action on behalf of himself and the Class, or alternatively, on behalf of Georgia Sub-Class.

213.    As a direct and proximate result of VW's misrepresentations about the AEB System and its functionality and the safety of the Class Vehicles and their failure to disclose known defects, VW has profited through the sale and lease of the

Class Vehicles.  Although these vehicles are purchased through VW's agents, the money from the vehicle sales flows directly back to VW.

214.   As a result of their wrongful acts, concealments, and omissions of the defect in its Class Vehicles, as set forth above, VW charged higher prices for their vehicles than the vehicles' true value.  Plaintiff and members of the Class paid that higher price for their vehicles to VW's authorized distributors and dealers, which are in VW's control.  VW also reaps huge profits from the sale of its vehicles through its authorized distributors and dealers, with Audi sales amounting to €55.7 billion in revenue in 2019 alone.

215.   Additionally, as a direct and proximate result of VW's failure to disclose known defects in the Class Vehicles, Plaintiff and Class Members have vehicles that will require high-cost repairs that can and therefore have conferred an unjust substantial benefit upon VW.  VW has been unjustly enriched due to the known defects in the Class Vehicles through the use money paid that earned interest or otherwise added to VW's profits when said money should have remained with Plaintiff and Class Members.

216.   As a result of the VW's unjust enrichment, Plaintiff and Class Members have suffered damages.

## RELIEF REQUESTED

217.   Plaintiff, on behalf of himself and all others similarly situated, requests the Court to enter judgment against Defendants, as follows:

(a)   An order certifying the proposed Class and Georgia Sub-Class, designating Plaintiff Pieras as representative of the Class and the Georgia Sub-Class, and designating the undersigned as Class Counsel;

(b)   A declaration that Defendants are financially responsible for notifying all Class Members about the defective nature of the Class Vehicles and the existence of the AEB System Defect, including the need for repairs;

(c)   An order enjoining Defendants from further deceptive distribution, sales, and lease practices with respect to Class Vehicles; compelling Defendants to issue a voluntary recall for the Class Vehicles pursuant to 49 U.S.C. § 30118(a); compelling Defendants to remove, repair, and/or replace the Class Vehicles' with suitable alternative product(s) that do not contain the defects alleged herein; enjoining Defendants from selling the Class Vehicles with the misleading information; and/or compelling VW to reform its warranty, in a manner deemed to be appropriate

by the Court, to cover the injury alleged and to notify all Class Members that such warranty has been reformed;

(d)    An award to Plaintiff and the Class for compensatory, exemplary, and statutory damages, including interest, in an amount to be proven at trial;

(e)    Any and all remedies provided pursuant to the Magnuson-Moss Warranty Act;

(f)    A declaration that Defendants must disgorge, for the benefit of the Class, all or part of the ill-gotten profits received from the sale or lease of its Class Vehicles or make full restitution to Plaintiffs and Class Members;

(g)    An award of attorneys' fees and costs, as allowed by law;

(h)    An award of pre-judgment and post-judgment interest, as provided by law;

(i)    Leave to amend the Complaint to conform to the evidence produced at trial; and

(j)    Such other relief as may be appropriate under the circumstances.

## DEMAND FOR JURY TRIAL

218.    Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of all issues in this action so triable.

Dated: December 8, 2020                Respectfully Submitted,


    /S/ Russell D. Paul
_____
Russell D. Paul (NJ Bar. No. 037411989)
Amey J. Park (NJ Bar. No. 070422014)
Abigail J. Gertner (NJ Bar. No. 019632003)
**BERGER MONTAGUE PC**
1818 Market Street
Suite 3600
Philadelphia, PA  19103
Tel: (215) 875-3000
Fax: (215) 875-4604
rpaul@bm.net
apark@bm.net
agertner@bm.net

Steven Weinmann (N.J. Bar No. 033111989)
Tarek H. Zohdy (*pro hac vice to be filed*)
Cody R. Padgett (*pro hac vice to be filed*)
**CAPSTONE LAW APC**
1875 Century Park East
Suite 1000
Los Angeles, California 90067
Tel: (310) 556-4811
Fax: (310) 943-0396
steven.weinmann@capstonelawyers.com
tarek.zohdy@capstonelawyers.com
cody.padgett@capstonelaywers.com

*Attorneys for Plaintiffs and the Proposed Class and Subclasses*

## EXHIBIT A

**DATE OF INCIDENT:**             May 18, 2016

**DATE COMPLAINT FILED:**      August 2, 2016

**NHTSA/ODI ID:**                     10892542

**VEHICLE:**                              Audi A8 2015

**SUMMARY:**  I WAS DRIVING ON A SUBURBAN CITY STREET IN A STRAIGHT LINE WITH NO CARS OR ANY OTHER OBSTRUCTIONS AHEAD OF ME OR BEHIND ME. WITHOUT WARNING, THE CAR ENGAGED ITS EMERGENCY BRAKING THROWING MY DAUGHTER AND ME FORWARD VIOLENTLY INTO OUR SEAT BELTS. WHEN I FELL BACK, THE DASHBOARD WAS SHOWING ME A PROXIMITY WARNING BUT AGAIN NOTHING WAS ANYWHERE NEAR OUR CAR. THE SERVICING DEALERS SAID THEY DIDN'T FIND ANY ERROR CODES AND SO THERE WAS NOTHING THEY COULD DO. THIS HASN'T HAPPENED AGAIN (YET) BUT THE CAMERAS ALL AROUND THE CAR THAT ENGAGE FOR PARKING AND IN REVERSE ARE CONSTANTLY GOING OUT AND/OR THE VEHICLE MMI SYSTEM RANDOMLY RETRACTS INTO THE DASH WHILE DRIVING.

**DATE OF INCIDENT:**        January 19, 2018

**DATE COMPLAINT FILED:**        January 22, 2018

**NHTSA/ODI ID:**          11064060

**VEHICLE:**               Audi Q5 2018

**SUMMARY:** MY VEHICLE HAS A SAFETY FEATURE CALLED AUDI PRESENCE. MY NEW VEHICLE Q5 PRESTIGE (LESS THAN 150 MILES, JUST 6 DAYS OLD) HAD MALFUNCTIONED WITH AN UNEXPECTED AUTOMATIC BREAK ON JAN 17TH 2018 AT AROUND 7:29PM CENTRAL TIME WHILE ON SERVICE ROAD OF HIGHWAY 114 GOING TOWARDS WEST (STRAIGHT ROAD IN MOTION) BEFORE REACHING THE INTERSECTION OF FREEPORT IN IRVING, TX. THERE WAS NOTHING IN THE STREET THAT COULD BE IDENTIFIED AS AN OBJECT THAT WOULD CAUSE A COLLISION OR ANY KIND OF ACCIDENT. THE SUDDEN BREAK REALLY CAUSED A MENTAL SHOCK TO ME. I WAS LUCKY TO HAVE NO VEHICLE JUST BEHIND ME. I WAS DRIVING AT AROUND 40 MILES PER HOUR.

I HAVE USED COLLISION AVOIDANCE TECHNOLOGY FOR THE LAST 3.5 YEARS (MERCEDES BENZ, SUBARU FORESTER AND THE LATEST BEING TOYOTA COROLLA) AND I AM VERY FAMILIAR WITH THE TECHNOLOGY AND NEVER RAN INTO SUCH ISSUES. I CONTACTED AUDI SUPPORT AND THEY MENTIONED IT IS NOT UNUSUAL AND YOU SHOULD TAKE IT TO DEALER. I TOOK THE VEHICLE TO DEALER AND

THEY INFORMED IT HAPPENS ALL THE TIME AND AUDI IS VERY
SENSITIVE TO THIS COMPARED TO OTHER BRANDS TO BE MORE SAFE.
THEY WERE NOT EVEN WILLING TO CHECK THE VEHICLE AND
WANTED ME TO COME BACK IF IT HAPPEN AGAIN. THEY ALSO TOLD
THEY HAVE NO WAY TO FIGURE OUT WHAT HAPPENED. ON MY
ESCALATION ONE OF THE SENIOR MANAGER IN SALES TOLD ME HE
OWNS AUDI AND PRE SENSE RUN INTO THIS ISSUES BUT NEED NOT BE
WORRIED.FINALLY THEY RAN AN AUTOMATED TEST AND
CONFIRMED THEIR REPORT DOES NOT SHOW ANY ISSUES WITH THE
VEHICLE. I AM DRIVING THE VEHICLE NOW BUT HAS THE FOLLOWING
CONCERNS:1) AUDI CUSTOMER SUPPORT NOT DEALER IS APPEARS TO
BE NOT TRAINED HOW TO HANDLE SAFETY ISSUES WHEN REPORTED.


2) DEALER DID NOT REGISTER MY REPORTED ISSUE. THEIR REPORT
PROVIDED DID NOT CAPTURE WHAT ISSUE WAS REPORTED. TO ME
THIS IS A BAD PRACTICE. IT IS UNCLEAR IF THIS WAS DELIBERATE.I
APPRECIATE WHAT NHTSA DO.


**DATE OF INCIDENT:**          April 8, 2018

3

**DATE COMPLAINT FILED:**     April 9, 2018

**NHTSA/ODI ID:**          11084045

**VEHICLE:**               Audi S4 2018

**SUMMARY:** THE VEHICLES PRE SENSE AUTO-BRAKING AND BRAKING ALERT JOLT HAS BEEN ACTIVATING ERRONEOUSLY AND HAVE ALMOST CAUSED ACCIDENTS AT SPEED. THE SYSTEM CANNOT BE PERMANENTLY DISABLED, IT DEACTIVATES UPON IGNITION RESTART. THE SYSTEM HAS ERRONEOUSLY AND AGGRESSIVELY JOLTED THE BREAKS ON SEVERAL OCCASIONS ON CURVES, ESPECIALLY WHEN CRESTING A HILL WITH VEHICLES PARKED ON THE DOWNWARD SLOAP. CLEARLY, IT IS MISTAKEN THE PARKED VEHICLES FOR A POTENTIAL IMPACT, EITHER AGGRESSIVELY JOLTED THE BREAKERS AND/OR BREAKING. THIS IS NOT ONLY VERY FRIGHTENING BUT ON A SLIPPERY SURFACE, WOULD HAVE CAUSED AN ACCIDENT. THIS FEATURE ALSO ACTIVATED ON THE HIGHWAY AT 65+ MPH WHILE SAFELY CHANGING LANES, AND ALMOST LED TO MY VEHICLE BEING REAR-ENDED. THERE SHOULD BE A WAY FOR A DRIVER TO PERMANENTLY DISABLE OR CUSTOMIZE THIS FEATURE TO BETTER ADAPT TO ENVIRONMENTAL AND/OR UNIQUE DRIVER CONDITIONS. AS IS, THIS FEATURE HAS BEEN DANGEROUS!

4

**DATE OF INCIDENT:**        April 13, 2018

**DATE COMPLAINT FILED:**        April 17, 2018

**NHTSA/ODI ID:**        11088565

VEHICLE:        Audi Q5 2018

**SUMMARY:**  SINCE WE LEASED THIS CAR LAST YEAR IN APRIL, WE HAVE HAD MANY ISSUES WITH THE PRE-SENSE PREMATURELY GOING OFF IN THE LATE SETTING ( AUTOMATIC BRAKING SYSTEM TO PREVENT REAR COLLISIONS.

THERE HAVE MANY TIMES WHERE MY WIFE WAS BACKING OUT OF OUR DRIVEWAY AND EVEN IN THE LATE SETTING IT PICKED UP VEHICLES FROM THE OPPOSITE LANE AND ABRUPTLY SLAMMED ON THE        BRAKES,        SCARING        MY        WIFE.

ONE OF THESE TIMES WHEN IT DID THIS, IT CAME EXTREMELY CLOSE TO WHERE BY THE TIME SHE WAS ABLE TO GAIN CONTROL , ENGAGING IT IN DRIVE SHE WAS ALMOST HIT IN THE BACK OF THE CAR UNTIL SHE COULD ACCELERATE TO THE SPEED LIMIT OF THE ROAD WE LIVE ON WHICH IS 35 MPH. THERE HAS BEEN OTHER TIMES,

LIKE BACKING UP IN OUR DRIVEWAY AND IT JUST DECIDES TO GO OFF WITH NO VEHICLES IN THE THE DRIVEWAY???

I HAVE HAD THE DEALER LOOK AT THIS TWICE AND HAVE BEEN IN CONVERSATIONS WITH AUDI CORPORATE. THEIR LAST COMMENT TO ME IS THE SYSTEM IS WORKING AS DESIGNED.

THIS IS MY 20+ AUDI AND CURRENTLY HAVE ONE OTHER 2018 AUDI AND 2018 VW. LAST YEAR ALONE I HAD 4 AUDI'S SO I AM FAMILIAR WITH THE PRODUCT, THIS IS WORKING PROPERLY AND IS A SAFETY ISSUE WHICH CONCERNS ME THAT COULD CAUSE MY WIFE TO BE IN AN ACCIDENT BECAUSE OF THE PREMATURE ENGAGEMENT.

I WANT TO MENTION THAT MY WIFE IS NOW INCONVENIENCED HAVING TO BACK INTO OUR DRIVEWAY THUS PREVENTING IT TO GO OFF WHEN LEAVING FOR WORK EVERY DAY. SINCE WE LIVE ON A SCENIC BYWAY, THERE IS A STEADY FLOW OF CARS BUT AGAIN AT A SLOWER SPEED OF 35 MPH. LASTLY THIS SYSTEM IS SET TO LATE WARNING BUT CAN NOT BE TURNED OFF PERMANENTLY OR WE WOULD.

I HAVE SENT MANY EMAILS TO AUDI , SPOKEN WITH THE DEALER AND THE EXECUTIVE ASSISTANT. THERE ARE OTHER COMPLAINTS ONLINE WITH PEOPLE HAVING ISSUES WITH THE NEW PRE-SENSE SYSTEM.

**DATE OF INCIDENT:**          June 14, 2018

**DATE COMPLAINT FILED:**          June 15, 2018

**NHTSA/ODI ID:**          11102227

**VEHICLE:**          Audit Q5 2018

**SUMMARY:**  THE VEHICLE WAS STOPPED AND I WAS INTENDING TO TURN LEFT AT A SIGNAL LIGHT. WHEN THE SIGNAL CHANGED FOR ME TO PROCEED I ACCELERATED INTO MY LEFT TURN WHEN THE CAR SUDDENLY BRAKED ON ITS OWN AND PULLED ME BACK INTO THE SEAT. THE AUDI SENSE INDICATOR CAME ON BEING ACTIVATED AS IF IT SENSED I WAS ABOUT TO MAKE IMPACT WITH ANOTHER VEHICLE. HOWEVER, I WAS THE FIRST VEHICLE TURNING LEFT AND THERE WERE NO OTHER VEHICLES IN FRONT OF ME NOR ANY OTHER VEHICLES OPPOSITE OF MY LANE OF TRAVEL SO THERE WERE NO VEHICLES ANYWHERE NEAR MY VICINITY THAT SHOULD HAVE TRIGGERED THE AUDI SENSE. THERE WERE NO VEHICLES BEHIND ME

ALSO TURNING OR I'M SURE THEY WOULD HAVE REAR-ENDED MY VEHICLE GIVEN THE SEVERE BRAKING ACTION. THE SYSTEM INITIATED A SEVERE BRAKING ACTION AS IF I WAS ABOUT TO REAR-END ANOTHER VEHICLE.

THIS OCCURRED ON JUNE 14, 2018 AT AT APPROXIMATELY 10:30 AM. WEATHER CONDITIONS WERE WARM, DRY AND CLEAR WITH NO PRECIPITATION.

I BELIEVE THIS WAS CAUSED BY A MALFUNCTION IN THE AUDI SENSE CAUSING THE BRAKING SYSTEM TO INITIATE.

**DATE OF INCIDENT:**        March 10, 2019

**DATE COMPLAINT FILED:**        March 12, 2019

**NHTSA/ODI ID:**        11186236

**VEHICLE:**        Audi Q5 2018

**SUMMARY:**    ON MULTIPLE OCCASIONS WHEN DRIVING THE AUDI Q5 THE PRE-SENSE ENGAGES INAPPROPRIATELY (NO TRIGGER) RESULTING IN AN IMMEDIATE AND HARSH BRAKING OF THE CAR TO A COMPLETE STOP. IN TRAFFIC, THIS POSES A SIGNIFICANT RISK OF A

8

CRASH RESULTING IN DAMAGE AND POTENTIAL BODILY INJURY. THE

AUDI PRE-SENSE IS DESIGNED TO STOP A CAR FROM AN IMMINENT

CRASH, HOWEVER AN APPARENT FLAW IN THE TECHNOLOGY

ENGAGES THE PRE-SENSE WITHOUT TOTALLY UNNECESSARILY (NO

CROSS TRAFFIC, AT LEAST 10 FEET FROM A BUSH OR OTHER OBJECT).

NOT ONLY DOES THE UNEXPECTED AND UNNECESSARY HARD AUTO-

BRAKING ADD WEAR AND TEAR TO THE BRAKES AND SUSPENSION, IT

POSES A REAL RISK OF AN ACCIDENT AS OTHER DRIVERS DO NOT

EXPECT THE SUDDEN AND UNNECESSARY BRAKING. THIS HAPPENS

INTERMITTENTLY WITHOUT A PATTERN IN DRY AND WET WEATHER

ON A FLAT SURFACE OR AN INCLINE. ALWAYS OCCURS WHEN IN

REVERSE.

**DATE OF INCIDENT:**     April 25, 2019

**DATE COMPLAINT FILED:**     May 23, 2019

**NHTSA/ODI ID:**     11209563

**VEHICLE:**     Audi A4 2019

**SUMMARY:**  ON APRIL 25, 2019 I WAS DRIVING ON A CITY

STREET AND THE AUDI PRE SENSE UNEXPECTEDLY ACTIVATED

QUITE VIOLENTLY FOR ABOUT 2 SECONDS AND THEN TURNED OFF.

WHILE IT DID NOT STOP THE CAR COMPLETELY IT DID REDUCE MY

SPEED SIGNIFICANTLY. AT THE TIME I WAS THE ONLY CAR ON THE
ROAD; THAT IS, THERE WERE NO OTHER CARS WITHIN SIGHT OF
MINE. THERE WAS NO DAMAGE THAT I CAN SEE TO THE CAR BUT I
TRUST YOU CAN UNDERSTAND THAT THIS COULD HAVE BEEN A
MUCH WORSE SITUATION IF SOMEONE HAD BEEN FOLLOWING
CLOSELY BEHIND ME. I ALSO TRUST YOU UNDERSTAND THAT THIS
UNEXPECTED BRAKING IS UNACCEPTABLE. THE AUDI SERVICE
ADVISOR TOLD ME HE HAS SEEN THIS PHENOMENON BEFORE BUT
AUDI HAS NO EXPLANATION OR SOLUTION TO THE PROBLEM.

**DATE OF INCIDENT:**      August 1, 2018

**DATE COMPLAINT FILED:**      May 29, 2019

**NHTSA/ODI ID:**      11210627

**VEHICLE:**      Audi Q7 2018

**SUMMARY:**   TL* THE CONTACT OWNS A 2018 AUDI Q7. THE
CONTACT STATED THAT THE AUTONOMOUS BRAKE ASSIST FUNCTION
ENGAGED MORE THAN TWICE WITHOUT WARNING. THE FAILURE
OCCURRED WHILE AT AN INTERSECTION AND UPON MAKING A LEFT
TURN. THE VEHICLE HAD COME TO A COMPLETE STOP WHEN A RED
WARNING INDICATOR ILLUMINATED AND INDICATED TO TAKE THE
VEHICLE TO THE DEALER FOR SERVICING. THE CONTACT WAS

UNCERTAIN IF THE DRIVER ASSIST FUNCTION WAS FAULTY AND COULD CAUSE A CRASH. AUDI ASHEVILLE (621 BREVARD RD, ASHEVILLE, NC 28806, (828) 232-4000) INITIALLY INDICATED THAT THIS WAS A NORMAL CONDITION. AFTER THE FAILURE RECURRED, THE VEHICLE WAS TAKEN BACK TO THE DEALER FOR FURTHER DIAGNOSTIC TESTING. THE MANUFACTURER WAS NOTIFIED AND THE CONTACT WAS WAITING TO DETERMINE IF THEY HAD A REMEDY. THE FAILURE MILEAGE WAS NOT AVAILABLE.

**DATE OF INCIDENT:**        October 27, 2018

**DATE COMPLAINT FILED:**        December 13, 2019

**NHTSA/ODI ID:**        11288922

**VEHICLE:**        Audi A5 2018

**SUMMARY:**   AUDI PRE SENSE, THE NEW TECHNOLOGY AUDI USES FOR PREDICTIVE SAFETY. I HAVE EXPERIENCED SEVERAL AUDI PRE SENSE  BRAKING MALFUNCTIONS. THE AUDI PRE SENSE IN MY VEHICLE WILL ABRUPTLY & VIOLENTLY COME TO A FULL STOP, WITH NO OBSTRUCTIONS OR HAZARDS ANYWHERE NEAR THE VICINITY OF THE                                        CAR.


FIRST OCCURRENCE HAPPENED ON 405 HIGHWAY HEADING NORTH

ON OCTOBER 27, 2018 AT APPROXIMATELY 11:30 PM, DRIVING APPROXIMATELY 60 MPH. THE ROADS WERE CLEAR NO DRIVERS ANYWHERE IN MY VICINITY. THE ROAD WERE WET FROM HEAVY RAINFALL EARLIER IN THE EVENING. THE CAR COMES TO A VIOLENT SUDDEN STOP, RED HAZARD TRIANGLE APPEARS ON THE DASHBOARD, THESE TWO THINGS HAPPEN SIMULTANEOUSLY, THE SEATBELT ENGAGES & I'M SLAMMED FORWARD. THE BRAKES EMIT A LOUD GRINDING & CRUNCHING SOUND. IT TAKES SEVERAL SECONDS BEFORE I CAN BEGIN TO DRIVE AGAIN AS THE CAR IS LOCKED UP. THERE WERE NO OBSERVABLE OBSTRUCTIONS IN THE ROAD FOR IT TO MAKE THE CAR EMERGENCY BRAKE. WHEN THIS HAPPENED IT FELT LIKE I HAD HIT SOMEONE/SOMETHING, THAT WAS HOW VIOLENT THE STOP WAS. IT IS TERRIFYING AND DANGEROUS. ONCE I WAS ABLE TO DRIVE AGAIN, MY CAR DID NOT GO OVER ANY HAZARDS OR OBSTRUCTIONS AS THE VEHICLE THINKS THERE WAS, THERE WERE NO OTHER VEHICLES OR PERSONS IN MY VICINITY, THE ROAD WAS SMOOTH AND CLEAR. THE PRE SENSE HAS A MALFUNCTION RESULTING IN A BRAKING RESPONSE FAILURE.

I TOOK THE CAR TO AUDI SERVICES AND THEY KEPT THE CAR FOR 2

WEEKS, RECALIBRATE & RESET THINGS. I DROVE THE CAR FOR 8 MONTHS WITHOUT INCIDENT ONLY TO HAVE THE SAME THING REPEAT.

THIS SAME ISSUE HAS HAPPENED 3 OTHER OCCASIONS WHILE REVERSING.

AUDI MAINTAINS THAT PRE SENSE IS WORKING AS IT WAS DESIGNED & THERE IS NO FLAW. THEY WILL NOT WORK ON THE CAR ANY FURTHER. IF THIS HAPPENED DURING A TIME WHERE OTHER VEHICLES WERE AROUND, IT WOULD HAVE BEEN A GRAVE DANGER TO ME & OTHER PASSENGERS. AUDI IS KNOWINGLY & WILLINGLY SENDING UNSAFE VEHICLES ON THE ROAD.

**DATE OF INCIDENT:**        November 27, 2019

**DATE COMPLAINT FILED:**        December 13, 2019

**NHTSA/ODI ID:**        11288926

**VEHICLE:**        Audi A5 2018

**SUMMARY:**  AUDI PRE SENSE, IS THE TECHNOLOGY AUDI USES FOR PREDICTIVE SAFETY. I HAVE EXPERIENCED SEVERAL AUDI PRE

SENSE BRAKING MALFUNCTIONS. THE AUDI PRE SENSE IN MY VEHICLE WILL ABRUPTLY & VIOLENTLY COME TO A FULL STOP, WITH NO OBSTRUCTIONS OR HAZARDS ANYWHERE NEAR THE VICINITY OF THE                                                                          CAR.

FIRST OCCURRENCE HAPPENED ON 405 HIGHWAY HEADING NORTH ON SECOND OCCURRENCE HAPPENED ON 24TH ST IN REDMOND, HEADING NORTH ON NOVEMBER 27TH AT APPROXIMATELY 10:30 PM, DRIVING APPROXIMATELY AT 33 MPH..THE ROADS WERE CLEAR NO DRIVERS ANYWHERE IN MY VICINITY. THE ROAD WAS DRY. THE CAR COMES TO A VIOLENT SUDDEN STOP, RED HAZARD TRIANGLE APPEARS ON THE DASHBOARD, THESE TWO THINGS HAPPEN SIMULTANEOUSLY, THE SEATBELT ENGAGES & I'M SLAMMED FORWARD. THE BRAKES EMIT A LOUD GRINDING & CRUNCHING SOUND. IT TAKES SEVERAL SECONDS BEFORE I CAN BEGIN TO DRIVE AGAIN AS THE CAR IS LOCKED UP. THERE WERE NO OBSERVABLE OBSTRUCTIONS IN THE ROAD FOR IT TO MAKE THE CAR EMERGENCY BRAKE. WHEN THIS HAPPENED IT FELT LIKE I HAD HIT SOMEONE/SOMETHING, THAT WAS HOW VIOLENT THE STOP WAS. IT IS TERRIFYING AND DANGEROUS. ONCE I WAS ABLE TO DRIVE AGAIN,

MY CAR DID NOT GO OVER ANY HAZARDS OR OBSTRUCTIONS AS THE VEHICLE THINKS THERE WAS, THERE WERE NO OTHER VEHICLES OR PERSONS IN MY VICINITY, THE ROAD WAS SMOOTH AND CLEAR. THE PRE SENSE HAS A MALFUNCTION RESULTING IN A BRAKING RESPONSE                                                   FAILURE.

I TOOK THE CAR BACK TO AUDI SERVICES AND THEY KEPT THE CAR FOR 1 WEEK, THEY RAN DIAGNOSTICS & SAID THEY COULD NOTHING WRONG. THIS OCCURRENCE HAS HAPPENED 4X BEFORE, 1ST CLAIM NHTSA #11288922 AUDI INSISTS PRE SENSE IS WORKING AS IT WAS DESIGNED & THERE IS NO FLAW. THEY WILL NOT WORK ON THE CAR ANY FURTHER. IF THIS OCCURRED DURING A TIME WHEN TRAFFIC WAS HEAVY IT WOULD HAVE BEEN A GRAVE DANGER TO ME & OTHER PASSENGERS. AUDI IS KNOWINGLY & WILLINGLY SENDING UNSAFE VEHICLES ON THE ROAD.

**DATE OF INCIDENT:**        October 2, 2019

**DATE COMPLAINT FILED:**        January 10, 2020

**NHTSA/ODI ID:**        11298504

**VEHICLE:**        Audi A5 2019

**SUMMARY:**  ON TWO OCCASIONS SO FAR, WHEN MAKING A LEFT TURN IN A FOUR WAY INTERSECTION, THE PRE-SENSE SYSTEM DETECTED AN ONCOMING CAR WAY TOO EARLY AND APPLIED THE BRAKES HARD JUST AS I WAS WELL INTO THE TURN AND NEEDED TO GET OUT OF THE INTERSECTION BEFORE I BECAME A DANGER TO THE ONCOMING CAR. THIS PUT ME INTO A POTENTIALLY VERY DANGEROUS SITUATION. I AM AWARE THAT THE SENSITIVITY CAN BE ADJUSTED BUT, IN THIS CASE, THERE WAS NO DANGER AT ALL UNTIL MY CAR BRAKED SUDDENLY AS I WAS TRYING TO COMPLETE MY TURN SAFELY. THAT ACTUALLY CREATED A HAZARD. AS WITH OTHER SIMILAR COMPLAINTS THAT I HAVE READ ABOUT, I BELIEVE THAT THE SOFTWARE IS STILL SOMEWHAT IMPERFECT. I HAVE SINCE SELECTED THE LEAST SENSITIVE SETTING AND HAVE HAD NO FURTHER PROBLEMS. THE PRE-SENSE SYSTEM HAS ALSO BRAKED HARD SEVERAL TIMES WHEN BACKING UP EVEN THOUGH ANY POTENTIAL DANGER WAS STILL WELL AWAY FROM MY CAR. THE BRAKING IS SO HARSH AND STARTLING, THAT ALONE COULD CAUSE UNINTENDED CONSEQUENCES.

**DATE OF INCIDENT:**       April 15, 2020

**DATE COMPLAINT FILED:**       May 8, 2020

16

**NHTSA/ODI ID:**            111323824

**VEHICLE:**                Audi Q5 2018

**SUMMARY:**  AUDI PRE-SENSE BRAKING FAULT; RECALL

NEEDED!


1- WHILE MOVING FORWARD ON AN EMPTY, FLAT, 2-LANE,

SUBURBAN ROAD AT APPROXIMATELY 35MPH, THE BRAKES

SUDDENLY ACTIVATED, BRING MY VEHICLE TO A NEAR STOP, WITH

A LOUD, GRINDING SOUND. TERRIFYING. THERE WERE NO OBJECTS

OR VEHICLES ON THE ROAD, NO GLARING SUNLIGHT OR OTHER

PROBLEMS THAT COULD HAVE CAUSED THIS. APRIL 15, 2020.


2- TWICE OR MORE, IN THE FEW WEEKS OR SO PRIOR TO THIS EVENT,

WHILE BACKING UP INTO MY GARAGE, THE VEHICLE SUDDENLY

STOPPED WITH A LOUD GRINDING SOUND. THERE WERE NO OBJECTS,

VEHICLES, GLARING LIGHTS, OR ANYTHING THAT WOULD HAVE

CAUSED THE VEHICLE TO BRAKE THIS TIME VS. THE HUNDREDS OF

OTHER TIMES THE SAME PROCESS HAD BEEN COMPLETED. BETWEEN

JANUARY 1, 2020, TO PRESENT.

VEHICLE WAS APPROXIMATELY 1.5 YEARS OLD AND

APPROXIMATELY 10,000 MILES WHEN THESE BRAKING EVENTS

HAPPENED. I BELIEVE THE PROBLEM IS CAUSED BY AN ERROR IN

THE AUDI PRE-SENSE SYSTEM, WHICH CAUSES THE VEHICLE TO

BRAKE TO PREVENT A COLLISION. *TR

**DATE OF INCIDENT:**          June 1, 2017

**DATE COMPLAINT FILED:**          July 12, 2017

**NHTSA/ODI ID:**          11004966

**VEHICLE:**          Audi A3 2017

**SUMMARY:**  ENGINE SHUTS OFF WHEN CAR IS IN DRIVE OR

REVERSE WHILE VEHICLE IS IN MOTION AND DISPLAYS MESSAGE OF

"START/STOP SYSTEM DEACTIVATED. PLEASE RESTART ENGINE

MANUALLY. THE YELLOW CHECK ENGINE LIGHT THEN APPEARS.

AND THE VEHICLE ROLLS AWAY UNLESS BRAKES ARE APPLIED. THIS

HAPPENED MULTIPLE TIMES - 10 TIMES IN MY CAR, 3 IN MY FIRST

LOANER CAR AND 6 IN MY SECOND LOANER CAR. THE VEHICLE IS

USUALLY IN MOTION RIGHT AFTER THE ENGINE IS STARTED AND

THE CAR IS DRIVEN FOR ABOUT 500 FEET, AFTER THE CAR IS GOING

3-5 MPH THE ENGINE SHUTS OFF AND THE CAR WILL ROLL AWAY. ON

OTHER OCCASIONS WHEN THE CAR IS STOPPED IN TRAFFIC THE ENGINE SHUTS OFF AND WILL ROLL AWAY. EACH TIME YOU MUST PUT THE VEHICLE IN PARK AND RESTART THE ENGINE. ON ANOTHER OCCASION A PRE SENSE MALFUNCTION OCCURRED WHERE THE CAR SLAMMED ON ITS BRAKES IN TRAFFIC AND ALMOST CAUSED A REAR END COLLISION. THE DEALERSHIPS HAVE NO ANSWERS FOR THE FIRST PART, BUT CLAIM A BUG ON THE SENSORS CAUSED THE CAR TO SLAM ON ITS BRAKES.

**DATE OF INCIDENT:**          January 26, 2018

**DATE COMPLAINT FILED:**          February 5, 2018

**NHTSA/ODI ID:**          11067158

**VEHICLE:**          Audi S5 2018

**SUMMARY:**  FORWARD COLLISION WARNING AND MITIGATION SYSTEM (PRE SENSE CITY) DID NOT WORK TO PREVENT AN ACCIDENT WHERE I REAR ENDED A CAR THAT WAS STATIONARY. NO WARNING OR ACTION WAS TAKEN BY THE CAR. POLICE REPORT ATTACHED.

**DATE OF INCIDENT:**        January 20, 2018

**DATE COMPLAINT FILED:**        March 5, 2018

**NHTSA/ODI ID:**        11076352

**VEHICLE:**        Audi Q5 2018

**SUMMARY:**  I PURCHASED MY VEHICLE ON 4/21/2017, I WAS SOLD BY THE DEALERSHIP ON THE ADVERTISED SAFETY FEATURE CALLED THE AUDI PRE SENSE. AUDI PRE SENSE DETECTS COLLISION HAZARDS ALL AROUND THE CAR AND INITIATES SPECIFIC PREVENTIVE MEASURES. ON 1/20/2018 AT 9AM I WAS INVOLVED IN AN ACCIDENT WHERE I WAS DRIVING ON A CITY STREET GOING ABOUT 10-15 MPH, I WAS STOPPED AT A RED LIGHT AND WAS DRIVING OFF FROM THE INTERSECTION DUE TO THE GLARE IN MY EYES I WAS NOT ABLE TO SEE A CEMENT PILLAR IN FRONT OF ME. THE CAR COLLIDED AND THERE THE ENTIRE FRONT WAS SMASHED IN, THE ENGINE BELT WAS CLIPPED.I CONTACTED AUDI HEAD QUARTERS AND DESCRIBED TO THEM THE INCIDENT, PROVIDED PICTURES, AND POLICE REPORT. AUDI CUSTOMER CARE TOLD ME THAT THE SAFETY FEATURE DOES NOT WORK IN SUNLIGHT AND THAT IN THIS CASED THE AUDI PRE SENSE WOULD NOT OF DETECTED ANYTHING. THIS IS FAR DIFFERENT FROM WHAT THE DEALERSHIP TOLD AS WELL AS WHAT

20

IS PUBLISHED ON THEIR WEBSITE. THE AUDI PRE SENSE SHOULD BE
360 VIEW AND MY CAR SHOULD HAVE ALERTED ME THAT I WAS IN
AN ACCIDENT.

**DATE OF INCIDENT:**        April 9, 2018

**DATE COMPLAINT FILED:**        April 9, 2018

**NHTSA/ODI ID:**        11084005

**VEHICLE:**        Audi Q7 2018

**SUMMARY:**  THE 2018 AUDI Q7 HAS BEEN IN FOR SERVICE
THREE TIMES SINCE I LEASED THE CAR ON 9/11/2017. MY INITIAL
INQUIRY RELATED TO TECHNOLOGY ISSUES WAS BACK ON
DECEMBER 22, 2017 THAT WAS SHORTLY FOLLOWED UP BY A
SERVICE APPOINTMENT. AFTER YOUR TEAM ASSESSED THE ISSUE
AND ALLEGEDLY RESET THE SYSTEM, I CHECKED OUT OF THE
SERVICE DEPARTMENT, ONLY TO EXPERIENCE THE SAME
TECHNOLOGY ISSUE AS I WAS DRIVING OFF THE LOT. YOUR TEAM
PROCEEDED TO CHECK THE VEHICLE BACK IN FOR FURTHER
INVESTIGATION.

ASIDE FROM CONTINUED REBOOTS OF THE AUDI COMPUTER SYSTEM
OR MMI SYSTEM, THE CAR WOULD FLAG AUDI PRE SENSE WARNINGS

AND FORCE THE CAR TO STOP IN THE MIDDLE OF INTERSECTIONS, MID TURN. ONCOMING TRAFFIC WAS ESTIMATED AT 150 YARDS FROM THE INTERSECTION WHEN THE CAR JAMMED TO A STOP. THE SENSORS APPEAR TO STOP THE CAR AFTER IDENTIFYING A FALSE READ. THE CAR IS THEN STALLED IN THE MIDDLE OF AN INTERSECTION CAUSING SIGNIFICANT SAFETY RISK.

AUDI REPLACED THE MMI SYSTEM AND THE FUEL TANK AFTER IDENTIFYING A FAULTY VALVE. AFTER THE REPAIRS, THE VEHICLE CONTINUED TO HAVE THE SAME ISSUES. AUDI WAS NOT ABLE TO IDENTIFY THE SOURCE OF THE ISSUE AND CLAIMED THAT THE PRE SENSE SYSTEM SENSORS WERE SET TO A HIGH SENSITIVITY. THEY ALSO CLAIMED THAT A POTHOLE OR A BIRD COULD SET OFF THE SENSORS, CAUSING THE VEHICLE TO STOP IN THE MIDDLE OF AN INTERSECTION. THIS SEEMS LIKE A SERIOUS SAFETY ISSUE.

BY THE WAY, I WAS DRIVING A LOANER CAR FOR OVER THREE MONTHS WHILE THEY ATTEMPTED TO FIX MY VEHICLE AND FALSE PRE SENSE WARNINGS ARE COMMON.

**DATE OF INCIDENT:**    August 31, 2018

**DATE COMPLAINT FILED:**        September 1, 2018

**NHTSA/ODI ID:**        11123936

**VEHICLE:**        Audi Q7 2017

**SUMMARY:** I WAS ACCELERATING TO ENTER ONTO INTERSTATE I-30 AT 9:00AM ON A NICE SUNNY DAY, THERE WERE NO OTHER VEHICLES WITHIN 200' OF MY VEHICLE AND THE "PRE-SENSE" SYSTEM CAUSED THE BRAKES TO AUTOMATICALLY SLAM ON (TWICE) TO STOP THE CAR. OUT OF THE CORNER OF MY EYE I SAW A PIECE OF PAPER FLOATING ACROSS THE FRONT OF MY CAR AND WONDERED IF THAT WAS WHAT THE CAR "SAW" OR SENSED THAT CAUSED IT TO BRAKE. THANK GOODNESS NO ONE WAS BEHIND ME!

**DATE OF INCIDENT:**        August 22, 2018

**DATE COMPLAINT FILED:**        November 26, 2018

**NHTSA/ODI ID:**        11154083

**VEHICLE:**        Audi Q7 2017

**SUMMARY:** PRE-SENSE SYTSTEM NEARLY CAUSED ACCIDENT ON TWO OCCASIONS WHERE THERE WAS NO REASON FOR IT TO STOP THE CAR. FIRST TIME WAS AT 75MPH, ON CALIF. 46, 4 LANES DIVIDED, WESTBOUND ABOUT 25 MILES WEST OF I5, LEVEL STRETCH OF ROAD, CLEAR WEATHER, NO VEHICLE AHEAD IN EITHER LANE AND NO

23

ONCOMING TRAFFIC. CAR SUDDENLY CUT FUEL AND BRAKED TO A

STOP. I WAS IN RIGHT LANE AND ENDED UP ON SHOULDER.

FORTUNATELY, NO TRAFFIC CLOSE BEHIND OR I MIGHT HAVE BEEN

REAR-ENDED. AUDI DEALER COULD FIND NOTHING WRONG AND

HAD NO EXPLANATION. SYSTEM HAS FOUR SETTINGS: EARLY,

MEDIUM, LATE AND OFF. DEALER SET SYSTEM TO "LATE". WHEN I

ASKED IF I SHOULD TURN IT OFF, I REALIZED THERE WAS NO WAY

DEALER WOULD ADVISE ME TO DO SO BECAUSE OF POTENTIAL

LIABILITY. SECOND INCIDENT TWO MONTHS LATER. AT NIGHT, ON

VENTURA BLVD. IN SHERMAN OAKS, CA, AT CORNER OF KESTER

AVE., WESTBOUND AT NIGHT, PULLED INTO LEFT-TURN LANE.

INITIATED LEFT TURN BECAUSE ONCOMING TRAFFIC WAS A VERY

SAFE DISTANCE, FAR AWAY. PRE-SENSE SYSTEM ACTIVATED AND

STOPPED MY CAR IN THE FIRST LANE OF ONCOMING TRAFFIC.

BECAUSE THE NEXT ONCOMING VEHICLE WAS IN THE SECOND

(RIGHT) LANE, IT DID NOT IMPACT MY CAR. HAD THAT VEHICLE

BEEN IN THE FIRST LANE, I WOULD HAVE BEEN STRUCK AT 35-40MPH

BROADSIDE. THERE WAS ABSOLUTELY NO REASON FOR THE SYSTEM

TO STOP THE CAR. I PULLED OVER AFTER COMPLETING THE TURN

AND TURNED THE PRE-SENSE SYSTEM "OFF". THIS SYSTEM IS

24

CLEARLY NOT READY FOR DEPLOYMENT IN VEHICLES. RATHER

THAN AVOIDING AN ACCIDENT, THE SYSTEM NEARLY CAUSED AN

ACCIDENT THE ONLY TWO TIMES IT EVER ACTIVATED ON MY

VEHICLE.

**DATE OF INCIDENT:**          March 10, 2019

**DATE COMPLAINT FILED:**       March 12, 2019

**NHTSA/ODI ID:**          11186236

**VEHICLE:**          Audi Q5 2018

**SUMMARY:** ON MULTIPLE OCCASIONS WHEN DRIVING THE

AUDI Q5 THE PRE-SENSE ENGAGES INAPPROPRIATELY (NO TRIGGER)

RESULTING IN AN IMMEDIATE AND HARSH BRAKING OF THE CAR TO

A COMPLETE STOP. IN TRAFFIC, THIS POSES A SIGNIFICANT RISK OF A

CRASH RESULTING IN DAMAGE AND POTENTIAL BODILY INJURY.

THE AUDI PRE-SENSE IS DESIGNED TO STOP A CAR FROM AN

IMMINENT CRASH, HOWEVER AN APPARENT FLAW IN THE

TECHNOLOGY ENGAGES THE PRE-SENSE WITHOUT TOTALLY

UNNECESSARILY (NO CROSS TRAFFIC, AT LEAST 10 FEET FROM A

BUSH OR OTHER OBJECT). NOT ONLY DOES THE UNEXPECTED AND

UNNECESSARY HARD AUTO-BRAKING ADD WEAR AND TEAR TO THE

BRAKES AND SUSPENSION, IT POSES A REAL RISK OF AN ACCIDENT

AS OTHER DRIVERS DO NOT EXPECT THE SUDDEN AND

UNNECESSARY BRAKING. THIS HAPPENS INTERMITTENTLY WITHOUT

A PATTERN IN DRY AND WET WEATHER ON A FLAT SURFACE OR AN

INCLINE. ALWAYS OCCURS WHEN IN REVERSE.

**DATE OF INCIDENT:**          April 2, 2019

**DATE COMPLAINT FILED:**          April 2, 2019

**NHTSA/ODI ID:**          11193369

**VEHICLE:**          Audi Q7 2018

**SUMMARY:** AUDI HAS A PRE SENSE FEATURE THAT WILL

AUTOMATICALLY SLAM ON THE BRAKES. IT FAILS CONSTANTLY

AND SLAMS ON THE BRAKES AT VARIOUS TIMES. SO FAR IT HAS

BEEN AT SLOW SPEEDS, BUT SOMEONE IS GOING TO GET KILLED BY

THIS FEATURE. THERE IS NO WAY TO AUTOMATICALLY TURN IT OFF,

AND IT TURNS ON EVERY TIME YOU RESTART THE CAR

**DATE OF INCIDENT:**          April 3, 2019

**DATE COMPLAINT FILED:**          April 18, 2019

**NHTSA/ODI ID:**          11197095

**VEHICLE:**          Audi Q5 2018

**SUMMARY:** 1) AUDI PRE-SENSE ACTIVATED WHILE VEHICLE

WAS STATIONARY, IN DRIVE, WITH DRIVER'S FOOT ON THE BRAKE.

THIS OCCURRED WHILE WAITING IN THE LEFT TURN LANE OF A

TRAFFIC LIGHT. THE SEAT BELT PRE-TIGHTENED SUDDENLY, AND

FORCEFULLY. WHILE THE VEHICLE IS STOPPED AT A LIGHT THE

OCCUPANTS COULD BE EXPECTED TO BE LEANING OVER, LOOKING

IN THE GLOVE BOX ETC., AND THE PRE-TIGHTENING OF THE SEAT

BELT COULD CAUSE AN INJURY. THIS IS ALSO STARTLING, SINCE IT

SEEMS INDICATIVE OF A COLLISION, AND COULD CAUSE THE DRIVER

TO REMOVE THEIR FOOT FROM THE BRAKE LOSING CONTROL OF THE

VEHICLE. THE PRE-SENSE SYSTEM IS SUPPOSED TO ONLY BE ACTIVE

ABOVE 20MPH. ITS ACTIVATION WHEN THE VEHICLE IS STOPPED

IMPLIES A SERIOUS SAFETY DEFECT. COULD THIS DEFECT CAUSE

OTHER SAFETY RELATED SYSTEMS TO ACTIVATE INCORRECTLY

LIKE THE AIR BAGS?

**DATE OF INCIDENT:**         January 5, 2019

**DATE COMPLAINT FILED:**     May 18, 2019

**NHTSA/ODI ID:**         11208451

**VEHICLE:**             Audi Q5 2018

**SUMMARY:**  THE AUDI PRE SENSE WAS ACTIVATED WITHOUT

ANY VEHICLE IN FRONT OF THE CAR WHEN IT WAS AT SPEED ~50

MILES/HOUR. THE ROAD WAS EMPTY WHEN THIS HAPPENED. THE

CAR BROKE REALLY HARD AND THE SPEED REDUCED TO LESS 20 MILES/HOURS IN 1-2 SECOND. THIS IS A SERIOUS SAFETY ISSUE, AS THE DRIVER BEHIND WOULD NOT HAVE ENOUGH TIME TO RESPOND TO THE SUDDEN BREAKING. THE CAR HAD ONLY ~1000 MILES ON IT WHEN THIS HAPPENS.

**DATE OF INCIDENT:**       April 25, 2019

**DATE COMPLAINT FILED:**       May 23, 2019

**NHTSA/ODI ID:**       11209563

**VEHICLE:**       Audi A4 2019

**SUMMARY:**  ON APRIL 25, 2019 I WAS DRIVING ON A CITY STREET AND THE AUDI PRE SENSE UNEXPECTEDLY ACTIVATED QUITE VIOLENTLY FOR ABOUT 2 SECONDS AND THEN TURNED OFF. WHILE IT DID NOT STOP THE CAR COMPLETELY IT DID REDUCE MY SPEED SIGNIFICANTLY. AT THE TIME I WAS THE ONLY CAR ON THE ROAD; THAT IS, THERE WERE NO OTHER CARS WITHIN SIGHT OF MINE. THERE WAS NO DAMAGE THAT I CAN SEE TO THE CAR BUT I TRUST YOU CAN UNDERSTAND THAT THIS COULD HAVE BEEN A MUCH WORSE SITUATION IF SOMEONE HAD BEEN FOLLOWING CLOSELY BEHIND ME. I ALSO TRUST YOU UNDERSTAND THAT THIS UNEXPECTED BRAKING IS UNACCEPTABLE. THE AUDI SERVICE

28

ADVISOR TOLD ME HE HAS SEEN THIS PHENOMENON BEFORE BUT AUDI HAS NO EXPLANATION OR SOLUTION TO THE PROBLEM.

**DATE OF INCIDENT:**          July 18, 2019

**DATE COMPLAINT FILED:**          July 20, 2019

**NHTSA/ODI ID:**          11233605

**VEHICLE:**          Audi A4 2018

**SUMMARY:**  MY SON JUST CRASHED MY 2018 AUDI A4 WITH PRE SENSE BASIC AND CITY. $20K DAMAGE IN THE FRONT! NO AIR BAG DEPLOYED. IT HAPPENED ON A HIGHWAY DURING MORNING RUSH HOUR IN HEAVY TRAFFIC. HE WAS DRIVING AROUND 40MPH, TRAFFIC SLOW DOWN AND HE DID NOT REALIZE UNTIL IT WAS TOO LATE. HE BRAKED HARD, BUT THE AUTO BRAKE NEVER KICKED IN.

**DATE OF INCIDENT:**          September 28, 2019

**DATE COMPLAINT FILED:**          September 28, 2019

**NHTSA/ODI ID:**          1123258717

**VEHICLE:**          Audi A5 2019

**SUMMARY:**  I WAS STOPPED IN A TURN LANE TO MAKE A LEFT TURN ACROSS 3 LANES OF OPPOSING TRAFFIC ON A MAJOR US HIGHWAY. . I STARTED THE TURN AND THE PRE-SENSE SYSTEM STOPPED THE CAR AS IT WAS ENTERING THE OPPOSING LANE OF

29

TRAFFIC ALMOST CAUSING A DISASTER AS THE ONCOMING TRAFFIC

WAS MOVING APPROXIMATE 50-60 MPH. FORTUNATELY FOR THE

ONCOMING CAR, THE LANE ADJACENT WAS EMPTY AT THE MOMENT

SO THEY COULD MOVE OVER AND PASS ME SAFELY AS I WAS STUCK

IN THE LANE OF THE ONCOMING TRAFFIC WITH THE BRAKES

AUTOMATICALLY APPLIED.

**DATE OF INCIDENT:**         October 17, 2019

**DATE COMPLAINT FILED:**         October 18, 2019

**NHTSA/ODI ID:**         11269311

**VEHICLE:**         Audi SQ5 2018

**SUMMARY:**  I WAS STOPPED IN A DESIGNATED LEFT TURN

LANE WAITING FOR ONCOMING TRAFFIC TO CLEAR. AS THE LAST

CAR WAS PASSING ME GOING THE OPPOSITE DIRECTION I BEGAN TO

ACCELERATE AND MAKE MY LEFT TURN. THE AUDI PRE-SENSE

SLAMMED ON THE BRAKES. SO NOW I'M IN THE LANE OF ONCOMING

TRAFFIC WITH MY CAR TEMPORARILY DISABLED. THIS IS THE

FOURTH TIME THIS HAS HAPPENED. IF I HAD HAD MY DOG IN THE

BACK OF THE CAR, HE WOULD HAVE BEEN THROWN INTO THE

WINDSHIELD. I'VE BEEN DRIVING FOR 50 YEARS, MY WIFE, FOR 48

AND HAVE NEVER BEEN IN AN ACCIDENT. IT IS MY OPINION THAT

THIS SYSTEM IS UNSAFE AND THERE SHOULD BE A WAY TO HAVE IT

PERMANENTLY DISABLED.

## **EXHIBIT B**

The following are complaints relating to the AEB System Defect (spelling and grammar mistakes remain as found in the original) in Class Vehicles:

a)    **Audi-sport.net**

i.    Adrian76 (Apr 9, 2019)[23]: I have my Audi A4 Avant very nearly 12 months now and it has been great however this morning driving to work my car just locked up, fortunately i was city driving so not going very fast and it only actually last a few seconds but enough to put the fear in to me for the rest of the journey.

I thinking I am going to have to contact my local Audi Dealer to get it checked over but wondered if any of the fantastic Audi owners on here have had any experience of this?

ii.    maui (Apr 9, 2019)[24]: It sounds like it predict a collision, could have been the camera got confused or mistook a parked car as a collision risk?

I've had it a handful of time but it's unusual. With any AI logic there's always going to be a miscalculation, but if you want peace of mind to have it checked would not hurt.

---

[23] Available at https://www.audi-sport.net/xf/threads/audi-pre-sense-fault.387188/
[24] *Id.*

iii.　　Adrian76 (Apr. 9, 2019)[25]: There was no other vehicles on the road at the time, however thinking about it, it was on a 90 degree turn with glass fronted shop window, do you think it could have been the reflecting of itself that caused this?

iv.　　cosmicblue (Apr. 9, 2019)[26]: Sadly Audi Pre-Sense is a fault in it's own right – unpredictable actions are a feature, if there was a way of disability it using OBD11 I'd do it.

v.　　Candell (Apr. 10, 2019)[27]: Mine has gone off several times also, the garage told me that anything could trigger it including leaves if it's windy. On one route to my house, there is a tree almost in the road which sets the pre sense off every time. If I got that way, I have to turn it off.

It is a huge shock when it happens to you though, I gave the guy a scare behind me once when it happened.  If he hadn't reacted quickly enough and smalled his own brakes on, I'm not sure where I'd sit liability wise?!?!?!

vi.　　Niccoo (Jul. 19, 2018)[28]:  For a few days I have the message on the board: Audi pre sense: currently restricted.

---

[25] *Id*.

[26] *Id*.

[27] *Id*.

[28] Available at https://www.audi-sport.net/xf/threads/pre-sense-malfunction-and-remediation.376720/#post-3287988

33

Does anyone know how to fix this anomaly?

The care behaves normally, we did a diagnosis, and there are no operating errors.

vii.    Audi-Q (Feb. 13, 2020)[29]: Just got a Q7 for a week and for the last 3 "nights" in a row, it is already complaining; "Audi side assist and exit warning: currently unavailable. Sensor vision restricted due to surroundings." Turning the car off completely will reset this error message. Cycling (off/on) Pre Sense and Driver Assist in the MMI does not. Thus far, it seems that this error only pops up during night driving and starting to head downhill. It did snow and rain for the 1st 3 days of the ownership but it has since clear up (street and weather wise) for the last 3 days and nights. The rear bumper "corners" are clean and I even clean the circular indents of the 4 rear ultrasonic sensors, just in case.  Of course the dealer had no clue.

viii.    AudiUser01 (Aug. 26, 2020)[30]: I just wanted to share a recent experience I had with my Audi A4 B9 that scared the hell out of me with an unexpected and unwarranted pre-sense stop which manifested some of the worst neck and shoulder pain I've ever experienced that lasted for a week!

I've only had the car about 4 weeks and since this happened, I've turned the pre-sense from medium to late and fingers crossed it hasn't done it again.  However there

---

[29] *Id.*
[30]    Available    at    https://www.audi-sport.net/xf/threads/pre-sense-city-gave-me-whiplash.420079/#post-3609026

is an element of distrust and paranoia about this causing my passengers or myself injury or worse an accident whoever's behind when I least expect it.

I was in a 30 mph zone with no one in front of me and glorious weather, slightly up hill round a 45 degree bend that has a pub on the corner. As you approach this bend, your car is facing a pub and had people walking around in front of it. It was a little rural village location. Without warning, the car braked very aggressively for a split second, it didn't come to a full stop but was a significant enough stab of the brakes to kill all my momentum and catch me and the person behind me off guard and even leaving a few pedestrians looking at me wondering what the hell was going on due to the awful noise that came from the brakes and the car behind me giving me a blast of their horn.

There was no prior warnings or bongs, just a violent stab of the brakes out of the blue and the only reason I knew it was pre-sense was due to the fact I caught a glimpse of the dashboard saying pre-sense after the fact.

I believe it reacted to people crossing the opening of the junction to the left. Thankfully it was only me in the car at the time as ended up having whiplash for a week with some of the worst neck and shoulder pain I've ever experienced. Very worried about this causing an accident or injury to my passengers when I least expect it. Anyone else had any pre-sense stories?



b)    **AudiWorld.com:**

i.       December 7, 2017[31]: Hello All…

Three weeks ago, today, I traded in my MY 2016 S3, for a new S4. As I was familiar with the MMI, most of the new car was easy to understand.

The problem, and it is a problem, is the pre sense feature (PS) which seems to be the nanny of all nannies. A few days ago, when backing up, with absolutely NOTHING

---

[31]    Available   at   https://www.audiworld.com/forums/s4-b9-platform-discussion-214/pre-sense-issue-2938388/

behind me, that is, no kid, no car, no tree, no anything behind me, the car suddenly braked itself, shaking and shuttering the car and, frankly, I thought I surely must have backed into something. I got out, checked, and there was nothing there.  I though this to be strange, but just let it go as I did not have the time to try and figure out what had happened.

This morning, the same thing happened again….nothing behind me, the car suddenly and violently braked itself. Now I suspected the presense feature, which I did not have the S3, so, got the book out, hoping this could be turned off. As many of you may known, this feature has three settings early, medium, later or off. To be sure, I called Audicare and decided to turn it off completely. Got out of the car, went into my office.

A little later, I got back in the car, started it up, and checked to see if the PS was still turned off, that it did not default to back on. The display showed it was off. Drove away, and while driving, I was approaching a small bump in the road which I have driven over many times in this car. Suddenly, with no warning, the car momentarily braked itself, quickly and violently. I got a big red triangle on the dash saying PRESENSE. Basically, the car braked itself in the middle of the road due to a small bump I have driven over many times before. Had someone been close behind me, they could have hit me. This all happened with the PS supposedly off.  This is the

*worst* feature I have ever seen in a car as, instead of aiding in safety, this will cause an accident for sure with someone hitting me from behind, sooner or later.

Also, FWIW, with this feature turned off, and the car in park with the engine running, the entire speech dialog system is disabled. Apparently, you have to turn the PS off every time you start the car, as the default is to turn it on.

The idea of having to take the car to the dealer, trying to replicate the problem, and hoping there is a software fix, is something I despise doing. I do not want this car, I am totally soured to this car, and Audi, in their quest towards autonomous cars, in my mind put this feature in the cars not ready for prime time. This is the dumbest thing in the world, and now, with three weeks of ownership and 900 miles, I want to get rid of the car and Audi can take their Pretense and shove it. Imagine a car braking at a small bump in the road with the system turned off!!!!! Imagine the car braking when backing up when there is nothing there, with the system turned off!!! It scares the crap out of me when this happens, as it happens suddenly, violently, and without any                    reason                    for                    doing                    so.


I contacted Audicare and screamed bloody murder, I called the dealership and did the same. Next stop, the lemon law and all of the hassle that entails. I will not go to the dealer multiple times while Audi tries writing new code to fix this.

If anybody out there can tell me how to fix this, I am all ears.

In more years then I care to admit, I have NEVER hit anything behind me, and that includes most years without the benefit of a back up camera.They have taken a great little sleeper and ruined it with this garbage......I wish I had my S3 back.

Any and all thoughts appreciated......

    ii.       aj6 (Dec. 7, 2017)[32]: I've had a few missteps with the pre-sense. Mostly making a turn across oncoming traffic such as from the suicide lane. If you turn too early following a passing car it will sometimes get scared and perform the violent braking, stopping you with the nose of the car in the oncoming lane.

I've adjusted my driving style to prevent this activation of the system, but it's very alarming and can be dangerous when it activates at an unwanted time.

    iii.      ekyp (Dec. 9, 2017)[33]: I have a B9 as well and in Canada, we don't get pre sense city unless optioned with driver assistance package(thank God!). But my car came with the rear cross traffic alert (rear pre sense) and I hate it!.

---

[32] *Id.*

[33] *Id.*

I have to change how I park my car at home now because it's way too sensitive when I back out. One time, I was backing out near a wall and the car senses the wall as an approaching car and braked me. How could there be car coming if I am beside a wall already!

I tried to turn Audi pre sense off or turn ESP off before parking but I notice it doesn't actually turn off the auto brake feature when parking.

Very annoyed and I panick a lot now when ever I back up and hear beep from the car. I hope Audi can put an option in the mmi to turn off the auto brake feature.

    iv.       socialpro (Dec. 22, 2017)[34]:  I have also heard of similar nuances and complaints from my wifes S4 on the pre-sence - especially when backing up in an enclosed parking garage and it stomping on the brakes violently and harshly when there is clearly nothing around.

If anybody has gotten the dealer to 're calibrate' or address this issue with a software fix, etc - please share your updates.

It happens infrequently enough not to raise a panic yet - but definitely not something

---

[34] *Id.*

that should induce fear of driving and backing the car up, especially. We have turned of the 'pre sence' - and set activation to 'late' - but that did not seem to mitigate the problem.

v.       KarenPete Bloom (Nov. 20, 2019)[35]: I have experienced many sudden halts as you describe. I have a 2019 A5. Happened a few times simply backing up (nothing anywhere in site). Mostly, however, it happens in a suicide lane trying to make a left turn against oncoming traffic (with tons of time to do so). Has halted suddenly so many times I am now filled with anxiety when I drive. My daughter actually hurt her neck last week when it happened and she was a passenger. It is at the dealership as we speak. Just got the call that it is doing what it is designed to do. I hate driving this beauty of a car. What did you end up doing with yours? Lemon Law sounds like an awful long process, but at this point I just want to get something new.

vi.       Javier J (Feb. 16, 2020)[36]: Hey there guys. Want to share my experience. I'm going to try long story short. Almost 3 month ago, Dec 2019 i bought the new Audi Q3 Sline Premium here in Miami. Loved the car, the color, the features. Until i started to experience this problem with audi pre sense. The mal

---

[35] *Id.*

[36] *Id.*

function message is coming to my cockpit Random. I have being back and forth to the dealership 6 times before, they have done everything even replacing the Presense Module. i got and AUDI for quality and avoid issues i hate car errors. And 3 weeks later i am having the same issue. i just emailed AUDI and the managers at the dealership requesting a new car. My cars has only 970 miles and almost 300 miles going back and forth to the dealership. I don' t think that is quite acceptable. I created a case before with AUDI of America and i am reopening it to get this escalated. I told them i want to solve this in a friendly way so i dont have to hassle the Lemmon Law process. What do you guys think?

   vii.     Paul47     (Jan.     26,     2018)[37]:     2015     Audi     A3

I've gotten some pre-sense warnings when there was no way I was too close to anyone. It was when it was raining, maybe the sensor got confused? Anyway the last thing I need is the car applying maximum braking for nothing when it is raining (note - I haven't encountered this kind of excitement - yet). Just wondering if any have     turned     theirs     off,     and     how?

I understand it can be turned off until the car is restarted; that's a very poor "solution".

---

[37] Available at https://www.audiworld.com/forums/audi-a3-s3-rs-3-mkii-209/dont-like-pre-sense%3B-any-way-disable-permanently-2941725/

I                              want                         it                              gone.


Maybe if enough people complain to Audi, or if there are some lawsuits, we can get

rid of this. I consider this the worst feature of my car by far.

       c)      Youtube.com

i. Audi Pre Sense Issues - https://www.youtube.com/watch?v=sHNeUkKaaEA –

In each of these scenarios Pre Sense performed full braking (indicated by the double chime). It's hard to tell in the video because I had my foot on the gas to bypass it. I was well aware of my surroundings but it didn't matter, the car had a mind of its own. These "predictive safety" features are making me nervous to drive my Audi. There is also no way to permanently disable it that I know of.

1) 0:20 I was well within my own turning lane and there was plenty of space between myself and the car ahead. There was no reason why PS braked.

2) 0:29 I was cruising towards a right turning car. By the time I reached the intersection that car would have been gone. This is a very common driving situation. No reason for PS to brake.

3) 0:34 I was getting onto an on-ramp, but PS saw those construction reflectors and braked. That was especially dangerous as I could have been rear ended had my foot not been on the gas.

4) 0:39 That was a wide middle lane. I was simply easing on the gas to get a head start for a U-turn. No collision was imminent. PS braked.

5) 0:44 Obviously shouldn't have kicked in when there's nothing behind me. This has happened at least a dozen times in various places while backing up.
SHOW LESS